NICHOLS v ANN ARBOR FEDERAL SAVINGS AND LOAN
ASSOCIATION

KEMPF v ANN ARBOR FEDERAL SAVINGS AND LOAN
ASSOCIATION

1. MORTGAGES—REAL PROPERTY—DUE-ON-SALE CLAUSES—VENDOR AND
PURCHASER—PROMISSORY RESTRAINTS—RESTRAINTS ON ALIENA-
TION.

   A due-on-sale clause contained in a mortgage agreement is so
   closely akin to a promissory restraint as to justify designating
   it a direct restraint on alienation; restraints on alienation will
   not be enforced unless found to be reasonable in each particu-
   lar case.

2. MORTGAGES—REAL PROPERTY—PROMISSORY NOTES—DUE-ON-SALE
CLAUSES—ENFORCEMENT—LEGITIMATE INTERESTS—PRESERVING
SECURITIES—RISKS OF DEFAULT—VENDOR AND PURCHASER.

   A due-on-sale clause contained in a promissory note or a mort-
   gage will not be enforced unless the beneficiary-obligee can
   demonstrate a threat to one of his legitimate interests sufficient
   to justify the restraint on alienation inherent in its enforce-
   ment; such legitimate interests include not only that of preserv-
   ing the security from waste or depreciation but also that of
   guarding against the risks of having to resort to the security
   upon default.

3. MORTGAGES—REAL PROPERTY—LEGITIMATE INTERESTS—DUE-ON-
SALE CLAUSES—MAINTAINING INTEREST RATES—VENDOR AND
PURCHASER.

   A defendant seeking enforcement of a due-on-sale clause in a
   mortgage on the sole basis that it wishes to maintain its loan
   portfolio at current interest rates has not alleged a threat to a
   legitimate interest sufficient to justify such a restraint on
   alienation.

Appeal from Livingston, Paul R. Mahinske, J.

REFERENCE FOR POINTS IN HEADNOTES
[1–3] 61 Am Jur 2d, Perpetuities and Restraints on Alienation § 95.

Submitted October 6, 1976, at Lansing. (Docket Nos. 25528, 25529.) Decided January 5, 1977. Leave to appeal applied for.

Complaints by Charles D. Nichols and Laverne I. Nichols, and Herbert Kempf and Virginia Kempf against Ann Arbor Federal Savings and Loan Association seeking an injunction barring foreclosure of a mortgage. Cases consolidated. Judgment for plaintiffs. Defendant appeals. Affirmed.

*James P. Lawson,* for plaintiffs Nichols.

*Lawrence A. Thompson & Associates, P. C.,* for plaintiffs Kempf.

*Laird & Grace,* for defendant.

Before: M. F. CAVANAGH, P. J., and R. M. MAHER and BEASLEY, JJ.

R. M. MAHER, J. Defendant Ann Arbor Federal Savings and Loan Association held a mortgage on certain real estate located in the City of Brighton owned by Mr. and Mrs. Kempf. The mortgage contained a provision that allowed defendant to demand immediate payment of the entire mortgage debt if there was any change in ownership of the property.

Approximately six months after the execution of the mortgage, the Kempfs sold the property in question to the Nichols on land contract. Defendant then accelerated the mortgage indebtedness and commenced foreclosure proceedings by publication. The Kempfs and the Nicholses filed independent actions in the Livingston County Circuit Court seeking to permanently enjoin the foreclosure. The actions were consolidated and the parties submitted the case to the trial court for dispo-

sition on cross motions for summary judgment under stipulated facts.

The trial court granted summary judgment for all plaintiffs. The trial court found that the "due-on-sale" clause in the mortgage was unenforceable as an unreasonable restraint on alienation, and concluded that defendant was not entitled to foreclosure since there were no allegations that defendant's security was being wasted, impaired or lost. Defendant appeals and we affirm.

We must first determine whether the clause in question is a restraint on alienation. It reads:

"That the mortgage shall become due and payable forthwith at the option of the mortgagee if there shall be any change in the ownership of the mortgaged property, then and in such event, the aforesaid principle sum with accrued interest shall, at the option of the mortgagee, become due and payable immediately, notwithstanding anything herein contained or contained in the mortgage to the contrary."

Strictly speaking, as defendant points out, the "due-on-sale" clause in question does not fit within the definition of a restraint on alienation found in the *Restatement of the Law of Property*.[1] Neither

[1] *Restatement of the Law of Property:* § 404, p 2381. Definitions.

"(1) A restraint on alienation, as that phrase is used in this Restatement, is an attempt by an otherwise effective conveyance or contract to cause a later conveyance

(a) to be void; or

(b) to impose contractual liability on the one who makes the later conveyance when such liability results from a breach of an agreement not to convey; or

(c) to terminate or subject to termination all or a part of the property interest conveyed.

(2) If a restraint on alienation is of the type described in Subsection (1), Clause (a), it is a disabling restraint.

(3) If a restraint on alienation is of the type described in Subsection (1), Clause (b), it is a promissory restraint.

(4) If a restraint on alienation is of the type described in Subsection (1), Clause (c), it is a forfeiture restraint."

expressly nor by implication does it prohibit plaintiffs Kempf from alienating their interest. It does not provide that they are to be divested of their interest upon alienation. An author dealing with this type of clause, however, has written:

"Although written as an acceleration clause, the due on sale clause directly and fundamentally burdens a mortgagor's ability to alienate as surely and directly as the classical promissory restraint. As such, the due-on-sale clause is truly a direct restraint insofar as the category of direct restraints can be articulated." Volkmer, *The Application of the Restraint on Alienation Doctrine to Real Property Security Interests,* 58 Iowa L Rev 747, 774 (1973).

Support for this position may be found in the many cases from other jurisdictions which have held that "due-on-sale" clauses operate as restraints on alienation.[2] See, *e.g., Coast Bank v Minderhout,* 61 Cal 2d 311; 38 Cal Rptr 505; 392 P2d 265 (1964), *Tucker v Lassen Savings and Loan Association,* 12 Cal 3d 629; 116 Cal Rptr 633; 526 P2d 1169 (1974), *Malouff v Midland Federal Savings and Loan Association,* 181 Colo 294; 509 P2d 1240 (1973), *Baker v Loves Park Savings and Loan Association,* 61 Ill 2d 119; 333 NE2d 1 (1975).

If the mortgage clause defendant seeks to enforce can be labeled a restraint on alienation only by expanding the restatement definition, we do not

---

[2] We are not unaware that some jurisdictions, when dealing with "due-on-sale" clauses, have ignored the restraint on alienation theory and have based their decisions against enforcement of the clause on an equitable theory that enforcement, absent a showing of waste or impairment of the security, would amount to a penalty and would not be enforced by a court of equity. *Tucker v Pulaski Federal Savings and Loan Association,* 252 Ark 849; 481 SW2d 725 (1972). *Baltimore Life Insurance Co v Harn,* 15 Ariz App 78; 486 P2d 190 (1971), *order granting petition for review vacated and review denied,* 108 Ariz 192; 494 P2d 1322 (1972), *cf. Clark v Lachenmeier,* 237 So 2d 583 (Fla App, 1970).

hesitate to stretch the term to include this "due-on-sale" clause. "[I]t would appear that the due-on-sale clause is so closely akin to the promissory restraint as to justify designating it a direct restraint." 68 Iowa L Rev, *supra,* 773–774.

In answering the next question facing us, whether the due-on-sale clause is a reasonable restraint on alienation, we are helped by two decisions of this Court that deal with nonassignment provisions in land contracts. In *Pellerito v Weber,* 22 Mich App 242; 177 NW2d 236 (1970), this Court considered the validity of the following paragraph contained in a land contract:

"The purchaser covenants and agrees that he will not assign or convey his interest, or any part thereof, in this contract without having first obtained the written consent of seller. Any violation by the purchaser of this condition shall be considered a default of one of the conditions of this contract." *Pellerito, supra,* 243.

In our decision we declined defendant's invitation to declare that the clause in question was absolutely null and void as an unreasonable restraint on alienation. Instead we held as follows:

"Restraints on alienation of property are strongly disfavored in Michigan. *Mandlebaum v McDonell* (1874), 29 Mich 78, 107; Fratcher, *Restraints on Alienation of Equitable Interests in Michigan Property,* 51 Mich L Rev 509 (1953). Where they are permitted, they are strictly construed to prevent a forfeiture. *Ortmann v First National Bank of Monroe* (1882), 49 Mich 56; *Hodges v Buell* (1903), 134 Mich 162; *Hull v Hostettler* (1923), 224 Mich 365. Here plaintiffs have not made any allegations of waste or impairment or loss of security. They continue to enjoy the benefit of their 1953 contract. See *Jankowski v Jankowski* (1945), 311 Mich 340. Under the facts of this case we will not require a forfeiture; to do so would be to impose an unreasonable

restraint on the alienation of an equitable interest in real property." *Pellerito, supra,* 245.

In *Lemon v Nicholai,* 33 Mich App 646; 190 NW2d 549 (1971), the land contract provided that an assignment by the defendants without plaintiffs written consent would amount to a breach of the contract and that upon such breach plaintiffs could bring suit to accelerate the payments, recover possession of the property and enforce their rights in law or equity. After an assignment, plaintiffs obtained a judgment that forfeited defendants' rights in the land contract. After noting that plaintiffs made no allegations about waste or impairment of security, we reversed the order of the trial court awarding possession of the land to the plaintiffs. In remanding the matter to the trial court for a determination as to whether the assignment resulted in waste or impairment, we said:

"If it has not so resulted, then the action of these plaintiffs has amounted to an unreasonable restraint on the alienation of this property and is not enforceable in the circuit court." *Lemon, supra,* 649.

The bottom line in these two decisions is that Michigan has adopted a flexible approach in the area of restraints; a restraint on alienation will not be enforced unless it is found to be reasonable in a particular case.

We see no appreciable difference between the restriction at issue in *Lemon* and the due-on-sale clause in the instant case.

Recently the Supreme Court of California, faced with a situation similar to the one now before us, also adopted a flexible approach to restraints on alienation. In *Tucker v Lassen Savings and Loan Association, supra,* the Court held:

"[A] 'due-on' clause contained in a promissory note or deed of trust is not to be enforced simply because the trustor-obligor enters into an installment land contract for the sale of the security. Rather, in such a case the clause can be validly enforced only when the beneficiary-obligee can demonstrate a threat to one of his legitimate interests sufficient to justify the restraint on alienation inherent in its enforcement. Such legitimate interests include not only that of preserving the security from waste or depreciation but also that of guarding against what has been termed the 'moral risks' of having to resort to the security upon default. (See Hetland, *Real Property and Real Property Security: The Well-Being of the Law* (1965) 53 Cal L Rev 151, 170; see also, Cal Real Estate Secured Transactions, *supra* § 4.56, p 184.) Thus, for example, if the beneficiary can show that the party in possession under the installment land contract is, or is likely to be, conducting himself with respect to the property in a manner which will probably result in a significant wasting or other impairment of the security, he may properly insist upon enforcement of the 'due-on' clause. Similarly, if the beneficiary can show that the prospects of default on the part of the vendor (requiring the inconvenience of resort to the security) are significantly enhanced in the particular situation, such circumstances might constitute a sufficient justification for enforcement of the clause despite its restraining effect. Other legitimate interests of the lender may have a similar effect." 12 Cal 3d at 638–639; 116 Cal Rptr at 639; 526 P2d at 1175.

Defendant, arguing that enforcement of the clause should be allowed without a showing of waste or impairment, cites to *Baker v Loves Park Savings and Loan Association,* 61 Ill 2d 119; 333 NE2d 1 (1975). In holding a similar "due-on-sale" clause reasonable the Illinois court analogized from covenants against transfer in land contracts:

"We see little difference in the end to be promoted by

the restraint contained in the mortgage in this case from the end which is recognized as a legitimate object of protection by a restraint contained in a contract for sale of land."

*Lemon* and *Pellerito* obviously prevent a Michigan court from making the same analogy to uphold a due-on-sale clause.

Defendant also cites the Tennessee case of *Gunther v White,* 489 SW2d 529 (Tenn, 1973), and the Colorado decision in *Malouff v Midland Federal Savings and Loan Association,* 181 Colo 294; 509 P2d 1240 (1973). In *Gunther* the court, while upholding a "due-on-sale" clause, did not consider the substantive effect of the clause on the mortgagors ability to alienate the property. From the standpoint of equity the court stated that enforcement of the clause was not unconscionable or inequitable.[3] *Gunther* therefore does not answer the question posed by this litigation and is not proper authority for the proposition that a "due-on-sale" clause cannot be an unreasonable restraint on the right to alienate.

In *Malouff* the court did consider the clause as a restraint on alienation but held that enforcement of the clause was justifiable in order to allow the lender to protect itself against a rise in interest rates. The court placed heavy emphasis on an analogous case decided by the California Appeals Court, *Cherry v Home Savings and Loan Association,* 276 Cal App 2d 574; 81 Cal Rptr 135 (1969). The *Cherry* court, as quoted in *Malouff* stated:

"Secondly, loan agreements frequently permit a borrower to pay off a loan before it is due. When interest rates are high, a lender runs the risk they will drop

---

[3] For cases offering different answers to the same question, *see* note 2, *supra.*

and that the borrower will refinance his debt elsewhere at a lower rate and pay off the loan, leaving the lender with money to loan but at a less favorable interest rate. On the other hand, when money is loaned at low interest, the lender risks losing the benefit of a later increase in rates. As one protection against the foregoing contingency, a due-on-sale clause is employed permitting acceleration of the due date by the lender so that he may take advantage of rising interest rates in the event his borrower transfers the security. This is merely one example of ways taken to minimize risks by sensible lenders." 276 Cal App 2d at 579; 81 Cal Rptr at 138.

The Supreme Court of California repudiated this theory in *Tucker v Lassen Savings and Loan Association, supra.* In a footnote, the *Tucker* court stated:

"We reject the suggestion that a lenders interest in maintaining its portfolio at current interest rates justifies the restraint imposed by the exercise of a 'due-on' clause upon the execution of an installment land contract. Whatever cogency this argument may retain concerning the relatively mild restraint involved in the case of an outright sale * * * it lacks all force in the case of the serious and extreme restraint which would result from the automatic enforcement of 'due-on' clauses in the context of installment land contracts." 12 Cal 3d at 639, n 10; 116 Cal Rptr at 639–640, n 10; 526 P2d at 1175–1176, n 10.

While the California Supreme Court in *Tucker* was unimpressed by the argument that economic benefit to the mortgagee made enforcement of a due-on-sale clause reasonable in any instance, several other jurisdictions have joined Colorado in accepting this argument. The Supreme Court of Washington, in *Miller v Pacific First Federal Savings and Loan Association,* 86 Wash 2d 401; 545

P2d 546 (1976), approved enforcement of that portion of a due-on-sale clause that explicitly gave the mortgagee the option to increase the interest rate of a loan by up to two percent when the original mortgagor sold the property. The court noted that the mortgagee, in raising the interest rate, was exercising a right clearly stated in the mortgage agreement.

In *Crockett v First Federal Savings and Loan Association of Charlotte,* 289 NC 620; 224 SE2d 580 (1976), the Supreme Court of North Carolina looked to a mortgagee's interest in obtaining higher interest rates and upheld the exercise of a due-on-sale clause. As did *Cherry, Crockett* thought that a mortgagor's ability to prepay without penalty and take advantage of declining interest rates supported a like ability on the part of the mortgagee to take advantage of interest rates in his favor. The note signed by the Kempfs provided for a prepayment penalty, so even this weak argument is unavailable to support defendant's position here.

A strong dissent in *Crockett* pointed out that the clause under consideration there, like many due-on-sale clauses, would not reveal its purpose to most mortgagors. Justice Lake wrote:

"In the present instance, the accelerating event, as now construed by the money lender, is a 'sleeper' provision tucked away in the printed portion of the deed of trust so that its meaning, as now asserted by the money lender, would not readily catch the attention of a mortgagor, or a subsequent purchaser of the property, reading the deed of trust. A moderately alert and wary reader could easily assume the provision contemplated that the mortgagee's assent to a subsequent conveyance would not be unreasonably withheld and that the provision was intended only to protect the mortgagee's security. In my opinion, it would not read-

ily occur to such a reader, usually a person inexperienced in real property development and financing, purchasing a home for his family, that this seemingly innocuous clause meant the money lender could refuse to consent to a sale of the property to a purchaser of unimpeachable credit and character and foreclose unless the money lender was paid a toll on the transaction.

"If such be the meaning of the clause, as the majority opinion seems to hold, the demandable toll could be $1,000, or any other fixed lump sum, just as easily as it could be an increase in the interest rate. I recognize that the language used in the present deed of trust is without qualification and so is entirely susceptible of the construction the money lender and the majority opinion now put upon it. To prevent this clause from being a loan shark's trap for the unwary borrower, it should state explicitly that it is intended to permit the money lender to increase the interest rate or to require any other penalty to be paid to the lender." 289 NC at 633–634; 224 SE2d at 589 (dissenting opinion).

Volkmer, in his study of due-on-sale clauses, makes a similar point:

"In fact, the due-on-sale clause, even if read by the borrower, certainly does not convey the notion that waiver fees might be exacted or a higher interest rate demanded if the borrower dares to sell his property. Insofar as the due-on-sale clause would be justified as a disguised variable-rate mortgage, the fact remains that the element of disclosure is lacking." 68 Iowa L Rev, *supra,* 799.

With this criticism, the clause before us is easily distinguishable from the clause held enforceable by the Washington Supreme Court in *Miller, supra.* We need not decide here whether disclosure to the mortgagor of the due-on-sale clause's function as protection for the mortgagee's portfolio would make more cogent the argument that en-

forcement of the clause is reasonable. Under the facts of the present case, we, as did the California Supreme Court in *Tucker,* find the argument unpersuasive. See, Comment, *Judicial Treatment of the Due-on-Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability.* 27 Stan L Rev 1109 (1975).

Following the approach we have taken in *Pellerito* and *Lemon,* we choose to adopt the reasoning of *Tucker.* We see no justification for remanding the case to the trial court for a determination of whether the land contract between the Kempfs and Nichols impinged upon one of defendant's legitimate interests thereby justifying the enforcement of the "due-on-sale" clause. Here defendant made no allegations of any kind. The sole basis for enforcement of the clause was defendant's interest in maintaining its portfolio at current interest rates and thus, on these facts, the restraint on plaintiffs' Kempf's ability to alienate their property was unreasonable. The judgment of the trial court is affirmed.