**EYDE BROTHERS DEVELOPMENT COMPANY, a Michigan co-partnership, Plaintiff,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a New York corporation, Defendant.**

**No. G86–1052 CA5.**

United States District Court, W.D. Michigan, S.D.

Oct. 21, 1988.

John B. Curcio, Dykema, Gossett, Spencer, Goodnow & Trigg, Lansing, Mich., for plaintiff.

Thomas A. Bengston, Hubbard, Fox, Thomas, White & Bengston, Lansing, Mich., for defendant.

## OPINION OF THE COURT

ROBERT HOLMES BELL, District Judge.

This case presents a dispute as to the construction and enforcement of a note and mortgage which embody the parties' agreement concerning a $6 million loan from defendant to plaintiff. Now before the Court is defendant's motion for summary judgment under Fed.R.Civ.P. 56.

### I. SUMMARY OF FACTS

In June, 1978, plaintiff Eyde Brothers Development Company borrowed $6 million dollars from defendant Equitable Life Assurance Society of the United States ("Equitable") to finance construction of an apartment building complex. The terms under which this sum was to be repaid are set forth in a promissory note. The note provides for repayment over a 30–year period and restricted plaintiff's right to prepay, actually prohibiting prepayment of the whole principal within the first ten years.[1]

Further, performance of plaintiff's obligations under the note was secured by a real estate mortgage granting Equitable a lien upon the apartment building complex. A critical provision of the mortgage is the "due-on-sale clause" contained at ¶ 33:

> That the whole of the principal sum and the interest shall become due at the option of the mortgagee upon the transfer or other disposition or encumbrance, by mortgage or otherwise, of the premises or any part thereof, or upon the occurrence of a material change in the identity of control of the mortgagor (other than through death), without the written consent of the mortgagee.

A second critical provision is contained at ¶ 27:

> That this mortgage cannot be changed except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

It appears that in November, 1985, plaintiff proposed selling the subject realty and was told by Equitable either (a) that assumption of its obligations under the note and mortgage by a third party would not be allowed and that Equitable would accelerate the debt upon sale or transfer as provided under ¶ 33 of the mortgage; or (b) that assumption would be allowed only on the condition that the interest rate be in-

---

1. Specifically, the note provides at pp. 2–3:

"The undersigned shall have the right (noncumulative) to prepay the whole or any part of the principal sum hereof on any date for the payment of interest hereunder during the second loan year (as hereinafter defined) and thereafter except that no prepayment shall exceed Three Hundred Thousand ($300,000.00) Dollars in any one loan year until the eleventh loan year, and provided that (a) at the time specified for any prepayment there shall be no default hereunder nor under any instrument held as security for this note, (b) any prepayment of any amount exceeding such figure in any one loan year shall be accompanied by a charge, calculated upon such excess prepayment, of five per cent (5%) if paid during the last-mentioned loan year and diminishing one-quarter of one per cent (¼ of 1%) for each succeeding full loan year to one per cent (1%), and thereafter without further decease [sic], (c) the holder hereof shall have received at least thirty (30) days' prior written notice of any part prepayment and sixty (60) days' prior written notice of full prepayment, (d) no part prepayment shall affect the obligation to continue to pay the regular installments required hereunder until the entire indebtedness has been paid, and (e) if the full $6,000,000 is not disbursed, the above $300,000 prepayment without premium shall not be applicable and the prepayment premium set forth in this paragraph shall be applicable to the full amount prepaid. The term 'loan year' is defined as any period of one year commencing on the first day for the payment of interest hereunder or on any anniversary of such date."

creased.[2] Plaintiff was displeased with this response and, as discussed *infra*, alleges it constitutes a breach of the parties' agreement.

Understanding that assumption would not be allowed, plaintiff began to explore the possibility of prepaying the debt. It appears Equitable rejected plaintiff's proposal of prepayment on terms other than those permitted under the express provisions of the promissory note. So, in a letter dated March 27, 1986, plaintiff communicated its intention to Equitable as follows:

> Therefore, we will tender payment of the entire outstanding principle balance plus interest at 9¼% through the date of tender. Upon your acceptance of our offer, payment will be tendered promptly, not to exceed a period of 30 days. We do not feel that we can make future payments to you under the mortgage until we have assurance from you that this fair and reasonable offer is acceptable to Equitable. Should you not be willing to accept this offer and instead choose to accelerate the debt and proceed to foreclose, we will expect to receive written notice of this election. Under such circumstances, the default will be as a result of your action and we will not accept your demand for additional interest above 9¼%.

Apparently, this offer was neither expressly accepted nor rejected. However, in letters dated October 27, 1986 and November 6, 1986, Equitable informed plaintiff that it was deemed to be in default since April 1, 1986, and that Equitable had elected to accelerate the debt. The amounts claimed by Equitable to be immediately due and owing included the principal balance, default interest, and a prepayment penalty. Equitable sent plaintiff a further letter, dated December 19, 1986, reiterating its demand for payment, exclusive of the afore-mentioned prepayment penalty. After having commenced this action for declaratory relief on November 19, 1986,

plaintiff paid to Equitable the entire amount demanded, including the prepayment penalty, on December 26, 1986, under protest.

Plaintiff maintains it is entitled to judicial relief in six particulars, set forth in its first amended complaint. Equitable's motion for summary judgment challenges all six claims, asserting there is no genuine issue as to material fact and that it is entitled to judgment as a matter of law. Rather than evaluating the factual support for each of plaintiff's claims *seriatim*, the Court addresses itself to the evidence with reference to the several dispositive legal issues implicated by plaintiff's various claims.

## II. WHETHER EQUITABLE BREACHED THE MORTGAGE AGREEMENT

There is no dispute as to the fact that plaintiff defaulted in performance of its payment obligations. However, plaintiff asserts its default is excused in part by Equitable's prior breach. The breach is said to consist of Equitable's unilateral change of interpretation of the "due-on-sale" clause of the mortgage.

The due-on-sale clause provides that Equitable may, at its option, accelerate the debt upon transfer by plaintiff of an interest in the subject property without Equitable's written consent. Nothing in the language of the mortgage restricts Equitable's prerogative to grant or deny its consent to a proposed transfer. Yet, plaintiff insists it was understood by both parties that Equitable would not withhold its consent unreasonably. That is, it was understood that Equitable would not disapprove a proposed assumption of the loan by a "qualified" borrower. Plaintiff contends Equitable's rejection of its proposed assumption was in contravention of this understanding and precipitated plaintiff's default.

Plaintiff asks the Court to enforce a covenant which is not part of the parties'

---

**2.** Neither party has submitted evidence of the specific nature of plaintiff's proposal and Equitable's response, but, as will be seen *infra*, the Court's analysis applies with equal force and effect to both versions.

written mortgage agreement. The request is made in spite of ¶ 27 of the mortgage which prohibits alteration thereof except in writing. In support, plaintiff offers two items which purportedly suggest the written mortgage instrument does not embody the parties' entire agreement. In deposition, Patrick Eyde testified to his understanding at the time of the agreement that Equitable made a practice of approving assumptions where its interests would not be compromised. Patrick Eyde's understanding was informed by representations of his brothers, who had dealt with Equitable in the past. Also offered is the deposition testimony of Peter Popovic, who was regional manager of Equitable's commercial loan department in 1978. Mr. Popovic's testimony confirms that Equitable did have a policy of permitting reasonable assumptions and that a borrower who asked would have been so informed.

 Normally, extrinsic evidence is admissible to vary or explain the terms of a contract only where the contract is ambiguous. The due-on-sale clause is not ambiguous on its face. Plaintiff maintains it contains latent ambiguity and urges the Court to consider the extrinsic evidence to prove the existence of the ambiguity and to indicate the actual intent of the parties. *Goodwin v. Coe Pontiac, Inc.*, 392 Mich. 195, 205–206, 220 N.W.2d 664 (1974). Yet, even assuming the proffered evidence is properly considered by the Court, it offers little support to plaintiff's position. For even when viewed in the light most favorable to plaintiff, the evidence says nothing more than that Equitable had made a practice of permitting assumptions under certain circumstances and that plaintiff was aware of this practice. There is no evidence of a verbal unwritten agreement to be bound by this past practice; no evidence of a meeting of the minds; and, in fact, no evidence that the due-on-sale clause was even a subject of the parties' negotiations.

In other words, there is no evidence based upon which the Court could possibly find an implied-in-fact covenant by Eq-

uitable not to disapprove assumption of the mortgage loan except for reasonable cause.[3] Where the parties have reduced their agreement to writing and have expressly agreed that it may be changed only in writing, the Court must conclude that evidence of uncommunicated, discrepant expectations, though genuine, is insufficient as a matter of law to justify a judicial re-writing of the agreement. Accordingly, the Court concludes Equitable's disapproval of the proposed assumption was not in breach of the parties' agreement. Plaintiff's contrary understanding was not reasonable and does not excuse its default.

### III. WHETHER THE AGREEMENT IMPOSED AN UNREASONABLE RESTRAINT ON ALIENATION

 Plaintiff also asserts that its default was excused by Equitable's refusal to consent to the proposed assumption inasmuch as the refusal was based on a due-on-sale clause which is unenforceable because it constitutes an unreasonable restraint on alienation. In support, plaintiff cites *Nichols v. Ann Arbor Federal Savings & Loan Ass'n*, 73 Mich.App. 163, 250 N.W.2d 804 (1977), *leave denied* 400 Mich. 844 (1977). The *Nichols* court held that "Michigan has adopted a flexible approach in the area of restraints; a restraint on alienation will not be enforced unless it is found to be reasonable in a particular case." 73 Mich.App. at 168, 250 N.W.2d 804. Whether the present restraint is reasonable, plaintiff contends, is a question of fact.

However, the flexible approach described in *Nichols* no longer holds sway in Michigan with respect to due-on-sale clauses. On October 15, 1985, Michigan Public Act No. 351 of 1984 became effective. It provides in pertinent part that "a lender may enforce a due-on-sale clause in a real property loan in accordance with the terms of the loan contract." M.C.L. § 445.1622, M.S.A. § 23.1125(22). Thus, the *Nichols* rule has been superseded, insofar as it applied to due-on-sale clauses, by a clear legislative preference for upholding parties'

---

**3.** Moreover, the Court has been presented no evidence tending to show that Equitable's denial

of plaintiff's proposed assumption was unreasonable.

freedom of contract. There is no basis for holding the present due-on-sale clause an unreasonable restraint on alienation.

■ Plaintiff insists that when the due-on-sale clause is viewed in conjunction with the prepayment restrictions contained in the promissory note, the combined result constitutes an unreasonable restraint on alienation. The general rule regarding prepayment restrictions is summarized as follows:

Thus, a mortgagor generally has no right to insist that the mortgagee accept payment prior to the date of maturity, in the absence of a prepayment clause. If the mortgage contains such a clause, it will determine when, and under what conditions, the mortgagor may pay the mortgage prior to its maturity. Such a clause may provide a penalty, which is usually upheld....

55 Am.Jur.2d, Mortgages § 398, pp. 438–439. Again, the general rule, which would appear to apply in Michigan, pays deference to the parties' freedom of contract, promising enforcement of a prepayment clause in accordance with the parties' agreement.

Naturally, the Court would have the power to depart from the general rule where, under exceptional circumstances, a clearly inequitable result would otherwise occur. Such exceptional circumstances are not present in this case. First of all, enforcement of the prepayment clause is not really at issue in this case. Secondly, even though the due-on-sale clause and the prepayment clause combine to impose substantial restraint upon plaintiff's freedom of alienation, they are restrictions which two sophisticated business entities freely agreed to with open eyes. Neither party was beset by formerly unforeseeable circumstances which rendered this restraint unreasonably onerous. The Court has been presented no reason to hold either restriction unenforceable as an unreasonable restraint.

## IV. ENTITLEMENT TO REFUND OF DEFAULT INTEREST

■ The complaint also contains a claim for refund of default interest on the

ground that Equitable waived its right thereto by failing to make a prompt election of remedies. Plaintiff contends its letter of March 27, 1986, (*supra* at pp. 1432–33), constituted tender of payment in full and called for an immediate response from Equitable in the form of either acceptance or declaration of default.

It is generally true that valid tender of payment in full will suspend further accrual of interest on an outstanding obligation. The question is whether plaintiff's March 27, 1986 letter constitutes valid tender. A valid tender requires an actual offer to pay and an ability at the time of offer to pay the amount due, without stipulation or condition. *Swain v. Kayko*, 44 Mich.App. 496, 501, 205 N.W.2d 621 (1973). While plaintiff's letter represents an offer to pay the outstanding balance plus interest, it ignores the contractual prohibition of prepayment within the first ten years of the loan period and the prepayment penalty plaintiff agreed to pay if the loan were prepaid thereafter. Thus, plaintiff's proposed payment is in direct contravention of the parties' contract and, lacking any offer of a prepayment charge, can hardly be deemed an offer to pay the full amount due. Yet, these are the conditions subject to which Equitable was invited to accept the "tender" in satisfaction of the debt.

Clearly, plaintiff did not make a valid tender through its letter of March 27, 1986. Plaintiff argues the necessity of formal tender should be excused because it would have been refused by Equitable anyway, and the law does not require a useless formality. However, where plaintiff's original offer of payment was not a valid tender, the necessity of formal tender is not a "useless formality." *Id.* Moreover, plaintiff has made no showing that Equitable would have refused a *valid* tender; that is, one which accounted in some reasonable way for the contractual prepayment restrictions.

Plaintiff's letter is not a valid tender and did not suspend accrual of default interest. It is unfortunate that Equitable did not, apparently, respond to the letter. Yet,

plaintiff cannot reasonably have expected that it could, through a terse letter proposing satisfaction of the debt under terms clearly contrary to the parties' agreement, shift to Equitable the burden of either accepting the offer or accelerating the debt. Until it received valid tender, Equitable was justified in proceeding in the status quo under the terms of the agreement. These terms did not require Equitable to immediately declare a default and accelerate the debt upon plaintiff's failure to make timely payments. By voluntarily defaulting in the face of Equitable's silence, plaintiff assumed the risk that it would be penalized through default interest, as provided in the parties' agreement.

Accordingly, the Court concludes that default interest was properly chargeable to plaintiff and that plaintiff's letter of March 27, 1986, was ineffective as a matter of law, to suspend the accrual of such interest.

## V. ENTITLEMENT TO REFUND OF PREPAYMENT PENALTY

█ Since prepayment was a function of Equitable's decision to accelerate the debt, plaintiff contends Equitable is not entitled to assess a prepayment penalty. Plaintiff's argument is in accord with the general rule:

> [R]easonable prepayment premiums are enforceable ...
>
> There are, however, some limitations upon the right to receive a prepayment premium. For one, the lender loses its right to a premium when it elects to accelerate the debt.... this is so because acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity.

*Matter of LHD Realty Corp.*, 726 F.2d 327, 330–331 (7th Cir.1984) (citations omitted).

Equitable urges the Court to depart from the general rule so as not to reward plaintiff in its attempt to avoid the prepayment

penalty through intentional default. The *LHD Realty* opinion addressed this same argument. 726 F.2d at 331. After rejecting it, the court suggested nonetheless that, in appropriate cases, the courts could enforce a prepayment penalty even where the lender had accelerated the debt.

This is not an appropriate case. A fair reading of the prepayment clause indicates it was not designed to operate in conjunction with acceleration of the debt. If parties to a contract wish to avoid the general rule of *LHD Realty*, it is incumbent upon them to more clearly express their intent in their agreement. Moreover, although the Court does not condone plaintiff's intentional default, nor the manner in which it was accomplished, neither does the Court believe the equities weigh so heavily in favor of Equitable as to warrant award of both default interest and a prepayment penalty. This contractual relationship has broken down, at least in part, because the parties did not communicate with each other regularly, clearly and forthrightly. Both parties must bear a share of the blame. For these reasons, the Court holds, as a matter of law, that Equitable is not entitled to the prepayment penalty.

## VI. CONCLUSION

Equitable's motion for summary judgment attacks all six counts of the first amended complaint. The Court's review of the filings of record indicates that indeed, there is no genuine issue as to material fact and that judgment may be awarded as a matter of law. The foregoing analysis of the legal issues presented effectively disposes of all six counts, compelling (a) award of judgment in plaintiff's favor as to the claim embodied in count I for return of the prepayment penalty; [4] and (b) dismissal of counts II through VI.

Finally, the Court finds the complaint is not so totally lacking in factual and legal support as to justify imposition of sanctions. Equitable's motion for sanctions under Fed.R.Civ. 11 must be denied.

---

4. Although plaintiff has not filed a cross-motion for summary judgment, the Court may award summary judgment to a non-moving party where such result is warranted. See 6 *Moore's Federal Practice* ¶ 56.12 (2d ed.)

An order consistent with this opinion shall issue forthwith.

## JUDGMENT ORDER

In accordance with this Court's written Opinion issued on October 21, 1988,

IT IS HEREBY ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part;

IT IS FURTHER ORDERED that counts II through VI of the first amended complaint are DISMISSED;

IT IS FURTHER ORDERED that plaintiff is awarded JUDGMENT in its favor as to count I of the first amended complaint;

IT IS FURTHER ORDERED that defendant shall refund to plaintiff the full amount of the prepayment penalty, $280,-253.79, plus interest;

IT IS FURTHER ORDERED that defendant's motion for imposition of sanctions is DENIED.