[Sac. No. 8001. In Bank. Oct. 10, 1974.]

JERRY TUCKER et al., Plaintiffs and Respondents, v.
LASSEN SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Appellants.

630

## Counsel

Gibson, Dunn & Crutcher, G. Edward Fitzgerald, Martin C. Washton, Price, Burness & Price and R. E. Burness for Defendants and Appellants.

McKenna, Fitting & Finch, Bernard Kolbor and Aaron M. Peck as Amici Curiae on behalf of Defendants and Appellants.

Coshow, Barr & Tocher and John D. Barr for Plaintiffs and Respondents.

Jack F. Bonanno and Keil & Connolly as Amici Curiae on behalf of Plaintiffs and Respondents.

## Opinion

**SULLIVAN, J.**—We deal here with a so-called "due-on" clause commonly used in security transactions in real property to provide, at the option of the lender, for the acceleration of the maturity of the loan upon the sale, alienation, or further encumbering of the real property security.[1] In *La*

---

[1]The cases and the literature in this area of the law generally refer to acceleration clauses triggered by sale or encumbrance according to the particular triggering event involved in the case in question. Thus, even though a clause may permit acceleration *either* upon sale *or* upon encumbrance, it is normally referred to as a "due-on-sale" clause when the particular case involves sale and a "due-on-encumbrance" clause when the case involves encumbrance. In the instant case, because we consider the clause in

*Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113] we concluded that while the lender may insist on the automatic enforcement of such a clause upon the occurrence of an outright sale by the trustor-obligor, he may not exercise such an absolute power upon the further *encumbering* of the property by the trustor-obligor but may enforce such clause only when enforcement is reasonably necessary to protect his security.

In the instant case we confront the question whether the lender may automatically enforce a "due-on" clause when the trustor-obligor has entered into an installment land contract covering all or some of the property securing the loan. As will appear, we have concluded that such an executory contract does not necessarily, and in the circumstances of the case at bench in fact did not, justify the enforcement of the clause. We affirm the judgment.

In January 1969, plaintiffs Jerry and Nadine Tucker, husband and wife, and Dan and Sharon Tucker, husband and wife, purchased an improved parcel of property in Shasta County for the sum of $11,400. They made a down payment of $4,000 and financed the balance of $7,400 by a loan from defendant Lassen Savings and Loan Association (Lassen), giving Lassen their promissory note secured by a deed of trust on the property.[2] Both the note and the deed of trust contained "due-on" clauses of substantially the same language. The promissory note provided that if plaintiffs should "sell, convey or alienate the property . . . or any part thereof, or any interest therein, or shall be divested of title, or any interest therein in any manner or way, whether voluntary or involuntary, the holder hereof may, at its option, declare any portion or the entire amount of principal and interest to be immediately due and payable." The deed of trust, which named defendant Financial Federation, Inc. (Financial) as trustee and Lassen as beneficiary, provided in substantially similar language for the same result if plaintiffs should "sell, convey, or alienate, or further encumber said property, or any part thereof, or any interest therein. . . ."[3]

---

its overall operation as an acceleration device (see Cal. Real Estate Secured Transactions (Cont.Ed.Bar 1970) § 4.57, pp. 185-186) in the context of the rule against restraints on alienation, we refer to it generically as a "due-on" clause and make specific reference, where appropriate, to the applicable triggering event.

[2]The note was for $7,800—the difference between the amount actually paid and the amount of the note being retained by Lassen for loan fees and other charges. The note bore interest at the rate of 7.5 percent per annum on the unpaid balance.

[3]The "due-on" clause incorporated by reference into the deed of trust reads in full as follows: "TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES: . . . (12) That if the Trustor shall sell, convey, or alienate, or further encumber said property, or any part thereof, or any interest therein, or shall be divested of his title

Three of the four plaintiffs were real estate brokers or salesmen and had no intention of living upon the subject property, a fact of which defendants were fully aware at the time of the loan. Soon after purchasing the property plaintiffs rented it to Joseph and Delia Noll, husband and wife, on a month-to-month tenancy. This too was apparently brought to defendants' attention, but they made no effort to enforce the "due-on" clause on this basis[4]

In November 1969, plaintiffs entered into an installment land contract with their tenants the Nolls. This contract provided that plaintiffs were to retain legal title to the property until the full purchase price of $11,500 plus accrued interest had been paid. It further provided for a down payment of $900, with monthly payments of $110 on the balance—interest to accrue at the rate of 8 percent on the unpaid balance. The parties also executed a memorandum of contract of sale, which was duly recorded.

Upon learning of the installment land contract, defendants decided to enforce the "due-on" provision. They demanded that plaintiffs pay the unpaid principal together with $230 in prepayment charges on or before March 31, 1970. Plaintiffs were unable to pay this amount or to obtain substitute financing. In April 1970 defendants filed their notice of default and election to sell under the deed of trust. No sale was held pursuant to this notice, however, since the Nolls eventually entered into an arrangement with defendants pursuant to which the Nolls assumed the existing loan at an interest rate of 9.25 percent per annum. As a prerequisite to this arrangement plaintiffs were required to execute a quitclaim deed.

---

or any interest therein in any manner or way, whether voluntary or involuntary, all obligations secured hereby, irrespective of the maturity date expressed in any note evidencing the same, at the option of the Beneficiary and without demand or notice, shall immediately become due and payable."

Plaintiffs also executed a "Borrower's Statement of Understanding" which stated: "We understand that your loan committee has approved this loan not only because they consider the property adequate security, but also because of our credit rating. Therefore, should we sell or transfer the property to some other person whose credit the loan committee has had no opportunity to examine, the Association reserves the right to either approve the new party or parties or declare the entire sum owing due and payable."

[4]In its memorandum of decision the trial court stated: "The provisions of [the 'due on' clause] would certainly apply to leasing of the property but by defendant's own admission, it would not accelerate the note under that circumstance and others because its security would not be impaired even if those circumstances fell within the provisions of [the 'due on' clause]." (Compare the remarks in Cal. Real Estate Secured Transactions, *supra,* § 4.61, pp. 187-188.)

Plaintiffs thereupon brought this action claiming inter alia that defendants' exercise of the "due-on" clause in these circumstances constituted an unreasonable restraint on alienation within the meaning of Civil Code section 711, and that as a result they were damaged in the amount of the difference between what the Nolls owed them under the installment land contract and what they in turn owed Lassen on the original loan.

The court found the facts to be in the main as set forth above, further found that the transaction between plaintiffs and the Nolls in no way impaired defendants' security, and concluded that defendants' exercise of their purported rights under the "due-on" clause of the deed of trust constituted an unreasonable restraint on alienation under Civil Code section 711, as a result of which plaintiffs were damaged as claimed. Judgment was entered in favor of plaintiffs and against defendants in the sum of $3,724.85. This appeal followed.

As we noted at the outset, in *La Sala* v. *American Sav. & Loan Assn.*, *supra*, 5 Cal.3d 864, 877-882, we examined the theoretical underpinnings governing the application of the California rule against restraints on alienation (Civ. Code, § 711)[5] to "due-on" provisions. We first recognized that our decision in *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311 [38 Cal. Rptr. 505, 392 P.2d 265] had established that the rule was not absolute in its application but only forbade *unreasonable* restraints on alienation. Thus, upholding the exercise of a "due-on" clause upon an outright sale[6] of property subject to an equitable mortgage, we had stated in *Coast Bank* that a lender could insist upon performance of the clause in such circumstances because "it was not unreasonable for [the lender] to condition its continued extension of credit to [the borrowers] on their retaining their interest in the property that stood as security for the debt." (61 Cal. 2d at p. 317.) This was so, we observed in *La Sala*, because "[a] sale of the property usually divests the vendor of any interest in that property, and involves the transfer of possession, with responsibility for maintenance and upkeep, to the vendee." (*La Sala, supra,* at p. 880.)[7]

---

[5]Section 711 provides: "Conditions restraining alienation, when repugnant to the interest created, are void."

[6]By the term "outright sale" we refer to a transaction wherein the seller receives full payment from and transfers legal title to the buyer.

[7]We are, of course, aware that the interpretation of *Coast Bank* which we advanced by way of dictum in *La Sala* has been the subject of critical commentary. (See Bonanno, *Due on Sale and Prepayment Clauses in Real Estate Financing in California in Time of Fluctuating Interest Rates—Legal Issues and Alternatives* (1972) 6 U.S.F. L.Rev. 267, 280-291; Comment, *Applying the Brakes to Acceleration Clauses: Controlling Their Misuse in Real Property Secured Transactions* (1973) 9 Cal. Western L.Rev. 514; see also Comment, *Debtor-Selection Provisions Found in Trust Deeds and*

*La Sala*, however, involved not an outright sale but the taking of a junior encumbrance in a case where the "due-on" clause specifically covered that contingency. Here, we held, automatic performance of the clause was not justified because "[a] junior encumbrance . . . does not terminate the borrower's interests in the property, and rarely involves a transfer of possession." (*Id.* at p. 880.) We recognized that circumstances could arise wherein the taking of a junior encumbrance would involve danger to the security of the first lien, but we concluded that the burden was on the lender to show such danger of impairment in order to justify exercise of the "due-on" clause in such a situation. We concluded with a statement of the principles to be applied: "In those few instances previously discussed, in which the enforcement of that provision is reasonably necessary to avert danger to the lender's security, the restraint on alienation remains lawful under the principles established in *Coast Bank* v. *Minderhout* (1964) 61 Cal.2d 311, 317 . . . . When such enforcement is not reasonably necessary to protect the security, the lender's use of the clause to exact collateral benefits must be held an unlawful restraint on alienation. (See Note (1971) 22 Hastings L.J. 431, 440-441; Comment (1962) 35 So.Cal.L.Rev. 475, 487.)" (*Id.* at p. 882.)

We did not content ourselves in *La Sala*, however, with a simple elucidation and application of the principles announced in *Coast Bank*. Those principles, which relate to the *justification* for a particular restraint on alienation in terms of impairment of the lender's security, expose only one aspect of the problem. The other aspect, which we also introduced in *La Sala*, concerns the *quantum of restraint* involved in any particular situation. Addressing ourselves to the lender's argument (renewed by amici curiae in this case) that restraints against sales or encumbrances by means of the automatic application of a "due-on" clause are necessary to enable the lender to maintain its portfolio at the current market rate of interest, we said: "This argument may be appealing as applied to a *sale* of the property. The borrower in such sales generally receives cash sufficient to pay off his obligation. To permit the lender to accelerate ensures that all buyers of property must finance at the current interest

---

the *Extent of their Enforceability in the Courts* (1962) 35 So.Cal.L.Rev. 475; Valensi, *The Due on Sale Clause—A Dissenting Opinion* (1970) 45 L.A. Bar Bull. 121; Comment, *The Case for Relief from Due-on-Sale Provisions* (1971) 22 Hastings L.J. 431; cf. Cal. Real Estate Secured Transactions, *supra*, § 4.56, pp. 184-185.) However, we do not believe that the instant case—which involves the operation of a "due-on" clause in the context of a subsequent installment land contract—provides a proper occasion for considering the broad implications of the arguments there advanced. Such consideration must await a case involving the attempted exercise of a "due-on" clause upon outright sale by the trustor.

rate, and that none obtain an advantage because of the fortuitous fact that his seller originally purchased during a period of low interest. Acceleration upon sale of the property, in other words, does not seriously restrict alienation because the sale terms can, and usually will, provide for payment of the prior trust deed.

"A junior encumbrance, on the other hand, often represents only a small fraction of the borrower's equity in the property; it does not often provide the borrower with the means to discharge the balance secured by the trust deed. Thus under a due-on-encumbrance clause the borrower is exposed to a detriment quite different than that involved in a sale. He is restrained from executing any junior encumbrance unless he is willing to accede to lender's demand for current interest rates not merely upon the sum secured by the second lien, but also upon the balance due under the first trust deed, which is ordinarily a far greater amount.

"In any event, a restraint on alienation cannot be found reasonable merely because it is commercially beneficial to the restrainor. Otherwise one could justify any restraint on alienation upon the ground that the lender could exact a valuable consideration in return for its waiver, and that sensible lenders find such devices profitable." (*La Sala, supra,* at pp. 880-881, fn. 17.)

■ By the foregoing language we recognized that it is not only the *justification* for enforcing a particular restraint which is relevant to the determination of whether such a restraint is "reasonable" within the meaning of *Coast Bank*; we must also consider the *quantum of restraint*—that is, the actual practical effect upon alienation which would result from enforcement of the restraint. It is the relationship between these two factors which must govern our consideration of the enforcement of a "due-on" clause in particular circumstances: To the degree that enforcement of the clause would result in an increased quantum of actual restraint on alienation in the particular case, a greater justification for such enforcement from the standpoint of the lender's legitimate interests will be required in order to warrant enforcement.

It is this rule which we now proceed to apply to the case at bench. The specific question for decision, as indicated at the outset of this opinion, is whether the "due-on" clause involved in this case (see fn. 3, *ante,* and accompanying text) may be automatically enforced when the trustor-obligor enters into an installment land contract covering all or some of the property securing the loan.

We observe as a preliminary matter that the transaction here in question is clearly covered by the terms of the "due-on" clause before us. (2) Although one holding property subject to a deed of trust who executes an installment land contract does not thereby "sell, convey, or alienate" the *property* within the meaning of those terms in the clause, it is clear that such a one thereby "sell[s], convey[s], or alienate[s]" *an interest* in the property—to wit, his equitable interest in the property. (See generally Cal. Real Estate Secured Transactions, *supra*, § 3.58, p. 100; 1 Miller & Starr, Current Law of Cal. Real Estate (1965) p. 262.) Accordingly, the "due-on" clause is by its terms applicable to the transaction. We therefore proceed, by applying the rule stated above, to determine whether enforcement of the clause in these circumstances would amount to an unlawful restraint on alienation.

We conclude that the automatic enforcement of a "due-on" clause in instances where the trustor-obligor has entered into an installment land contract to sell the secured property would result in a restraint on alienation of very considerable proportions. In fact it is clear that such enforcement would operate to virtually eliminate alienation by installment land contract in all situations where the property to be conveyed was subject to a deed of trust and the obligation under the note remained substantial. From this standpoint the contrast between an outright sale and an executory sale by installment land contract is striking. In the former, as we pointed out in *La Sala,* the automatic application of the "due-on" clause results in little if any restraint on alienation because the terms of the second sale usually provide for full payment of the prior trust deed. In other words, the trustor-vendor normally receives enough money through the financing of the second sale to pay off his note, and he is normally required to do so. Little, if any, restraint on alienation results through enforcement of the provision.

In the case of the installment land contract, however, the matter is otherwise. The trustor-vendor normally receives a relatively small down payment upon execution of the contract, the remainder of the purchase price to be paid through monthly installments. This down payment, like the proceeds of the junior encumbrance involved in *La Sala,* "does not often provide the borrower with the means to discharge the balance secured by the trust deed." (*La Sala, supra,* p. 880, fn. 17.) The result is that a conveyance by means of an installment land contract would essentially be precluded in all cases wherein the balance due on the trustor-vendor's note was substantial if the "due-on" clause were to be given automatic effect. Accordingly, although the trustor-vendor might be willing to accept a rate of interest lower than that currently offered by

institutional lenders, the prospective purchaser would be compelled to resort to such lenders to finance the acquisition of the property. The result in terms of a restraint on alienation is clear.

It is against this effect that we must measure the factors advanced in justification. It is true that in the case of the normal installment land contract, as in the case of the outright sale, possession of the property is transferred to the vendee. In the normal case of junior encumbrance, on the other hand, possession remains in the mortgagor. Indeed, in *La Sala* we suggested in dictum that enforcement of a "due-on" clause even in cases involving junior encumbrances might be justified when the particular facts indicated that the mortgagee was in possession—"pos[ing] the same dangers of waste and depreciation as would an outright sale." (5 Cal.3d at p. 881.) We believe, however, that whatever dangers of this nature might be deemed to exist *in the abstract*, they do not justify the *blanket* restraint on alienation which the automatic enforcement of "due-on" clauses with respect to installment land contracts would involve. It is to be emphasized in this respect that in the case of the installment land contract the vendor retains legal title until the purchase price has been fully paid. Thus in the normal case the vendor, having received a small down payment and retaining legal title, has a considerable interest in maintaining the property until the total proceeds under the contract are received; in this he differs markedly from the vendor of property where there has been an outright sale.

It is true, of course, that from the point of view of the holder of the first lien, this interest of the trustor-vendor in the maintenance of the subject property cannot be fully equated with the interest of the trustor-vendor who *himself* remains in possession. It is also true that the former type of interest tends to decrease as the vendee's equity in the property increases through continued payments. But these factors do not in themselves justify the oppressive restraint on alienation which would result from automatic enforcement of the "due-on" clause whenever an installment land contract affecting the security is entered into.[8]

■■■ For the foregoing reasons we hold that a "due-on" clause contained in a promissory note or deed of trust is not to be enforced simply

---

[8]Indeed the beneficiary's asserted concern that the trustor himself remain in possession in order to prevent waste and depreciation seems somewhat exaggerated in view of the fact, reflected in footnote 4, *ante,* that the "due-on" clause is not normally exercised when the subject property is leased to another by the trustor. (See Cal. Real Estate Secured Transactions, *supra,* § 4.61, pp. 187-188.) The facts at bench, wherein the subject property was leased upon purchase to the very parties who later become vendees under the installment land contract, provide a case in point.

because the trustor-obligor enters into an installment land contract for the sale of the security. Rather, in such a case the clause can be validly enforced only when the beneficiary-obligee can demonstrate a threat to one of his legitimate interests sufficient to justify the restraint on alienation inherent in its enforcement. Such legitimate interests include not only that of preserving the security from waste or depreciation but also that of guarding against what has been termed the "moral risks" of having to resort to the security upon default. (See Hetland, *Real Property and Real Property Security: The Well-Being of the Law* (1965) 53 Cal.L.Rev. 151, 170; see also Cal. Real Estate Secured Transactions, *supra*, § 4.56, p. 184.) Thus, for example, if the beneficiary can show that the party in possession under the installment land contract is, or is likely to be, conducting himself with respect to the property in a manner which will probably result in a significant wasting or other impairment of the security, he may properly insist upon enforcement of the "due-on" clause. Similarly, if the beneficiary can show that the prospects of default on the part of the vendor (requiring the inconvenience of resort to the security) are significantly enhanced in the particular situation, such circumstances might constitute a sufficient justification for enforcement of the clause despite its restraining effect.[9] Other legitimate interests of the lender may have a similar effect.[10]

---

[9] In this respect the mere fact that the vendee under the installment land contract is not so good a credit risk as the trustor-vendor, while significant, would not be in itself determinative. As long as the trustor-vendor's equitable interest in the security remains significant, he retains a real incentive to prevent default, and the credit standing of his vendee would not afford sufficient justification for enforcement of the "due-on" clause. However, as the trustor-vendor's equitable interest diminishes through payment by the vendee, his incentive to prevent default—as well as his incentive to prevent damage to or waste of the security—also diminishes, until the moment when his entire equitable interest has passed to the vendee. At this point the propriety of enforcing the clause is clear. The trustor-vendor will now have been provided with the means to discharge the balance secured by the trust deed, so that the quantum of actual restraint on alienation caused by enforcement at this point will be minimal. Moreover, the beneficiary will no longer have the benefit of the built-in incentive to prompt payment and preservation of the property which the trustor-vendor's equitable interest provides. Accordingly, in a normal case the lender will be permitted to insist on enforcement of the "due-on" clause when the trustor-vendor's entire equitable interest in the security has passed to the vendee.

[10] We reject the suggestion that a lender's interest in maintaining its portfolio at current interest rates justifies the restraint imposed by the exercise of a "due-on" clause upon the execution of an installment land contract. Whatever cogency this argument may retain concerning the relatively mild restraint involved in the case of an outright sale (a matter to which we do not now address ourselves—see fn. 7, *ante*), it lacks all force in the case of the serious and extreme restraint which would result from the automatic enforcement of "due-on" clauses in the context of installment land contracts.

In the instant case defendants sought automatic enforcement of the "due-on" clause. They made no effort to demonstrate how the installment land contract entered into between plaintiffs and the Nolls impinged upon their legitimate interests to an extent which would justify enforcement of the clause in the particular circumstances of the case.[11] Nor did they attempt to show that the arrangement in any way endangered their primary recourse to plaintiffs for payment of their note.[12] The trial court properly concluded that in these circumstances defendants' purported exercise of the "due-on" clause was an unreasonable restraint on alienation within the meaning of section 711 of the Civil Code and therefore a legal nullity.

To the extent that it is inconsistent with this opinion, the case of *Cherry* v. *Home Sav. & Loan Assn.* (1969) 276 Cal.App.2d 574 [81 Cal.Rptr. 135] is disapproved.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Clark, J., concurred.

---

[11]Among the trial court's findings of fact were the following: "XIII. The defendants made no investigation regarding the Nolls to determine whether or not they were good loan risks, whether or not they were laying waste to the property or whether or not their security was in fact endangered in any respect by the Contract of Sale entered into between the plaintiffs and the Nolls. . . ."

[12]The trial court found: "XV. The transaction between the Nolls and the plaintiffs in no way impaired the defendants' security, and in fact it enhanced the defendants' security because the plaintiffs retained a substantial equitable interest in the property. Prior to the execution of the Contract of Sale, the defendants had four people to look to for the payment of the obligation secured by the Deed of Trust. Once a Contract of Sale has been entered into, the defendants had six people who had a substantial interest in seeing to it that the payments under the note and Deed of Trust were made as required."