**WISCONSIN AVENUE ASSOCIATES, INC., et al., Appellants,**

v.

**2720 WISCONSIN AVENUE COOPERATIVE ASSOCIATION, INC., et al., Appellees.**

**GOLD DEPOSITORY AND LOAN COMPANY, INC., Appellant,**

v.

**2720 WISCONSIN AVENUE COOPERATIVE ASSOCIATION, INC., et al., Appellees.**

Nos. 79–631, 72–1102 and 79–1103.

District of Columbia Court of Appeals.

Argued June 17, 1981.

Decided Feb. 2, 1982.

E. Leo Backus, Washington, D. C., for appellants in Nos. 79–631 and 79–1103.

John H. MacVey, Washington, D. C., for appellant in No. 79–1102.

Richard A. Hibey, Washington, D. C., with whom Robert B. Wallace, Washington, D. C., was on briefs, for appellees.

Before HARRIS, MACK and PRYOR, Associate Judges.

HARRIS, Associate Judge:

Appellees, a District of Columbia cooperative housing association and individual members of the cooperative, brought suit in Superior Court charging appellants, former officers and/or directors of the cooperative and various related corporate entities, with breach of fiduciary duty and breach of contract.[1] Appellants challenge the trial court's findings—made after a nonjury trial—of breach of contract and breach of fiduciary duty and the resulting cancellation of indebtedness, transfer of title to several apartment units to the cooperative, invalidation of several provisions of the deed of trust, and award of nominal and punitive damages and attorneys' fees. Appellant Gold Depository and Loan Company (GDLC) seeks reversal of the post-judgment issuance of an injunction on August 10, 1979, preventing it from selling certain cooperative apartments in violation of the

final judgments and injunctive order of April 27, 1979. In addition, appellant Laurins disputes the August 10, 1979, finding that he was in civil contempt for noncompliance with the April 27, 1979, final judgment. We affirm the trial court's final judgments and order and its issuance of the injunction prohibiting the sale of apartment units by GDLC. That portion of the appeal which is directed to the civil contempt citation is moot.

I

In November of 1974, A. V. Laurins & Company, Inc., entered into a sales contract with Marjory J. Jawish and Henry Jawish for the purchase of the building at 2720 Wisconsin Avenue, N.W. The parties agreed upon a purchase price of $750,000, consisting of a cash down payment of $75,000, the assumption of two existing mortgages, and the issuance of a third mortgage.

On December 1, 1974, 2720 Limited Partnership (an entity controlled by defendant Laurins) agreed to purchase a $945,000 note to be executed by the yet-to-be-formed 2720 Wisconsin Avenue Cooperative Association, Inc. (Cooperative), in favor of the yet-to-be-formed Wisconsin Avenue Associates, Inc. (Associates).[2]

On December 6, Cooperative and Associates signed an assignment of purchase agreement under which Associates assigned to Cooperative its right to purchase the Jawish property in exchange for a "wrap-around" mortgage in the amount of $945,000 executed by Cooperative in favor of

---

1. The action in the trial court was brought by 2720 Wisconsin Avenue Cooperative Association, Inc., and 25 members of the cooperative. For purposes of these appeals, we refer to the plaintiffs collectively as "Cooperative." We refer to Wisconsin Avenue Associates, Inc. (Associates), Aleksandrs V. Laurins, and the following individuals and corporations collectively as "defendants": VAL Management Company, Inc., Metropolitan Mortgage Bankers, Inc., James G. Norman, Charlene Baden, Carol A. Tompkins, Wayne A. Chasen, Real Estate Equity Management, Inc., Scenic Travel, Inc., Real Development Management, Inc., Conference

Management Group, Inc., and Security National Bank.

2. The $945,000 note in favor of Associates was negotiated to 2720 Limited Partnership on December 13, 1974, to Real Development Management, Inc., on December 17, 1974, and to Co-op Mortgage Investors Limited Partnership (CMI) on December 20, 1974. All of these entities were owned or controlled by defendant Laurins. In August of 1978, the note was transferred without consideration to Co-op Investment Bankers (CIB). The trial court found that CIB was a mere continuation of CMI.

Associates. The sales agreement prepared by defendants stated that the entire corporate indebtedness was $945,000. The settlement sheets also reflected a purchase price of $945,000. The assignment of purchase agreement further provided that Associates would advance all cash required to acquire title to the property.

On the same date, Cooperative and Associates entered into two additional written agreements. First, Cooperative agreed to assign to Associates 100 percent of the membership interests in the cooperative for the sole purpose of selling membership interests to individual apartment purchasers. Secondly, Cooperative and Associates executed 49 mutual ownership contracts which gave Associates the power to transfer the individual apartments to the public.

On the date on which those agreements were signed, Cooperative's board of directors consisted of defendants Laurins, Norman, Baden, Chasen, and Tompkins. The members of the board of directors of Associates then were Laurins, Norman, and Baden. The assignment of purchase agreement was signed on behalf of Cooperative by Laurins and attested to by Baden. Laurins recognized that he owed a fiduciary duty to Cooperative as of that date.

On December 16, 1974, Cooperative executed another note in favor of Associates in the amount of $100,000. An additional note was executed in favor of Associates on September 1, 1975, in the amount of $5,700. The amounts advanced to Associates, totaling $105,700, were broken down as $75,000 for the down payment to the Jawishes, $9,365.90 in closing costs, and $21,334.10 in renovation expenses. The assignment of purchase agreement provided that Associates would advance all cash necessary for acquiring title and delineated the terms of such loans. The terms of the December 16,

1974, note, however, differed somewhat from those set forth in the assignment of purchase agreement.[3] The $100,000 note was alluded to in a footnote to the 1974–75 budget; however, there the loan was listed as being in the amount of $84,366 and no interest rate was stated.

Two items of non-recurring income were included in the 1975 maintenance budget as "Estimated Income Items": $9,200 in membership fees and $6,900 in first-year principal payments.[4] These items were used to defray the maintenance expenses for the first year. Largely as a result of the non-recurring nature of these income items, the maintenance budget for the following year increased by 37 percent. Additionally, VAL Management Company, the Laurins-controlled property management organization, was late in preparing the 1976 budget and released the budget in the form of a notice of increase in fees.

On March 18, 1976, Cooperative brought suit in Superior Court charging defendants with breach of fiduciary duty and breach of contract. The trial court ordered that the nonjury trial be bifurcated on the issues of liability and damages.

On October 6, 1976, Associates executed 12 promissory notes in favor of 2720 Limited Partnership. Those notes were secured by the pledge of 11 mutual ownership contracts. Later, the notes were assigned to Co-op Mortgage Investors Limited Partnership (CMI), a Laurins-controlled partnership.[5] On January 5, 1978, Associates executed another promissory note in favor of Management Services Group, Inc., another Laurins-controlled corporation. That note was secured by the pledge of nine mutual ownership contracts.

On June 27, 1978, the trial judge issued his memorandum opinion on the liability issue. The court found that the promoters

**3.** The interest rate provided in the December 6, 1974, assignment of purchase agreement was 8.5%, while the $100,000 note actually carried an interest rate of only 8.0%. The payout period was reduced from 23 to 13 years, with a large ("balloon") payment to be made at the end.

**4.** Principal payments began November 1, 1975. No principal payments were required in the first year.

**5.** Real Estate Equity Management, a named defendant in the Superior Court litigation, was the sole general partner of CMI.

had breached their fiduciary duty by failing to advise cooperative members of the extent of the financial obligation they were undertaking. Although the court found the disclosure of the $945,000 note to be sufficient, it found that defendants failed to disclose adequately the existence of the $100,000 and $5,700 notes and to sustain their burden of showing the fairness of those transactions to Cooperative. Additionally, the court found that the terms of the $100,000 note were altered significantly to the detriment of Cooperative, and, consequently, that their inclusion constituted an overreaching. *See* note 3, *supra*. The court held that Cooperative would be obligated on those notes only to the extent that it received value. A further breach of fiduciary duty was found in Laurins' failure to disclose the anticipated increase in the 1976 maintenance budget. The court, however, found that the breach of fiduciary duty did not rise to the level of fraud.

The court invalidated four provisions of the deed of trust as oppressive and contrary to public policy. First, the court found that the provision which held Associates harmless from attorneys' fees or costs incurred regardless of the outcome of litigation violated the general rule that each party must bear its own costs of litigation. Second, the court struck down the paragraph which provided that the entire debt would be accelerated if a purchaser attempted to resell his unit as an unreasonable restraint on alienation. Next, the court found that the paragraph which provided that Cooperative's members could not prepay the participating financing without defendants consent was unenforceable as a severe impairment of the marketability of the units. Finally, the court declared void the provision that the $945,000 note would become due in full if the deed of trust were adjudicated null and void by a court.

The trial court also concluded that Associates breached its contractual duty to convey the units to purchasers and to prepare the apartments. The court enjoined defendants and all parties in active concert with them from selling or leasing any of the remaining unsold units. Because of Associates' breach of fiduciary duty, the court awarded attorneys' fees to Cooperative.

In addition to the individual defendants, the court held liable a number of corporate entities controlled by Laurins that had served as conduits for the various notes executed by Cooperative. The court dismissed defendants' counterclaims for tortious interference with defendants' contractual relations with tenants, damage to reputation, breach of contract, and negligent performance of contract.

On August 8, 1978, between the issuance of the trial court's liability and damage opinions, Co-op Investment Bankers (CIB) was formed. During August of 1978, the $945,000 note was transferred to CIB. At that time, the October 6, 1976, promissory notes also were endorsed over to CIB by CMI. On August 23, 1978, the October 6, 1976, notes were transferred to Gold Depository and Loan Company, Inc. (GDLC), a wholly-owned subsidiary of CIB. The January 1978 promissory note also was transferred to GDLC.

On December 18, 1978, the trial court issued its memorandum opinion on the damages issue. On the maintenance fee issue, the court concluded that although plaintiffs had established defendants' liability, they had failed to meet their burden of proof on damages. Accordingly, the court awarded nominal damages in the amount of $1 per plaintiff.

The court rescinded the contractual rights and obligations which the mutual ownership contracts for the 11 unsold apartment units sought to confer on defendants and ordered the defendants to turn over to plaintiffs all rents collected on those units plus the reasonable rental value of the units occupied by defendants.[6]

Because of the breach of fiduciary duty relating to the $100,000 note, the court awarded $30,700 in punitive damages to plaintiffs. For the misrepresentation of the maintenance budget, punitive damages of

6. Associates received credit for the mainte-     nance fees that it had paid on those 11 units.

$500 per purchaser were awarded. Punitive damages for the four unconscionable provisions of the deed of trust were denied.

The court awarded plaintiffs $124,245.16 in attorneys' fees and $9,974.48 in general costs. Finally, defendants were allowed $21,334.10 in renovation costs and $9,365.90 in closing costs relating to the cancellation of $105,700 of indebtedness.

On January 23, 1979, Associates filed a Chapter XI petition in Bankruptcy Court. On March 27, 1979, that petition was dismissed on the basis that it had been filed "in bad faith and for the sole purpose of thwarting plaintiffs' rights within the pending lawsuit in D.C. Superior Court." Three days later, appellants filed a Chapter VII petition with the Bankruptcy Court. On April 27, 1979, the Superior Court entered its order and final judgments. Appellants invoked the automatic stay provision of the bankruptcy laws. The stay, however, was lifted on June 14, 1979, by Judge Whelan of the Bankruptcy Court, who noted that the petition had been filed "for the purpose of delaying and otherwise thwarting the Plaintiffs in the Superior Court proceeding and not with any eye toward any legitimate relief under the Bankruptcy Act."

On July 10, 1979, GDLC demanded payment from Associates on the January 1978 promissory note. On that date, GDLC also sent default letters to Associates concerning the October 6, 1976, promissory notes. The letters stated that failure to make payment by July 16, 1979, would result in the public sale of the 11 apartment units. On July 12, 1979, Cooperative received copies of the default letters issued by GDLC. On July 13, the court issued an order to show cause why GDLC and defendants should not be found in contempt of that portion of the court's final judgment which expressly prohibited the further sale or leasing of the apartment units in question. On August 10, 1979, the court found Laurins in civil contempt of court and enjoined GDLC from selling the apartment units. On October 30, 1979, following the delivery of the mutual ownership contracts to Cooperative in compliance with the August 10, 1979, order, Laurins was purged of contempt.

## II

The trial court issued four comprehensive memorandum opinions in this case. When a case is tried without a jury, we may review both as to the facts and the law, but we may not set aside a judgment except for errors of law unless the judgment is plainly wrong or unsupported by the evidence. *See* D.C.Code 1981, § 17–305(a). That presumption as to the validity of the trial court's findings properly exists, inasmuch as the trial court heard the witnesses' testimony and evaluated their credibility. *See, e.g., Edmund J. Flynn Co. v. LaVay*, D.C. App., 431 A.2d 543, 546 (1981); *In re A.B.H.*, D.C.App., 343 A.2d 573, 575 (1975); *Johnson & Jenkins Funeral Home, Inc. v. District of Columbia*, D.C.App., 318 A.2d 596, 597 (1974); *Lee Washington, Inc. v. Washington Motor Truck Transportation Employees Health and Welfare Trust*, D.C. App., 310 A.2d 604, 606 (1973). Recognizing that limitation on our review function, we proceed to a consideration of the merits.

## III

Officers and directors of a corporation owe a fiduciary duty to the corporation and to its shareholders, which requires them to act in good faith in managing the affairs of the corporation. *See, e.g., United States v. Byrum*, 408 U.S. 125, 142, 92 S.Ct. 2382, 2393, 33 L.Ed.2d 283 (1972); *SEC v. Chenery Corp.*, 318 U.S. 80, 85, 63 S.Ct. 454, 458, 87 L.Ed. 626 (1943); *McKay v. Wahlenmaier*, 96 U.S.App.D.C. 313, 322, 226 F.2d 35, 44 (1955); *Johnson v. American General Insurance Co.*, 296 F.Supp. 802, 809 (D.D.C. 1969). Courts particularly scrutinize transactions between corporations with interlocking directorates, a situation in which two corporations have a majority of their boards of directors in common. Transactions resulting from actions of the common directors taken on behalf of both corporations must be deemed presumptively fraudulent. *Geddes v. Anaconda Copper Mining Co.*, 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65

L.Ed. 425 (1921); *Corsicana National Bank v. Johnson,* 251 U.S. 68, 90, 40 S.Ct. 82, 91, 64 L.Ed. 141 (1919); *Mayflower Hotel Stockholders Protective Committee v. Mayflower Hotel Corp.,* 84 U.S.App.D.C. 275, 277–282, 173 F.2d 416, 418–423 (1949).

■ Similarly, promoters of a corporation stand in a fiduciary relation to both the corporation and its stockholders, which requires them to act with the utmost good faith and to disclose fully all material facts to both the corporation and its stockholders. *McCandless, Receiver v. Furlaud,* 296 U.S. 140, 156–57, 56 S.Ct. 41, 45–46, 80 L.Ed. 121 (1935); *Dickerman v. Northern Trust Co.,* 176 U.S. 181, 203–04, 20 S.Ct. 311, 319, 44 L.Ed. 423 (1900); *Post v. United States,* 132 U.S.App.D.C. 189, 198, 407 F.2d 319, 328 (1968), *cert. denied,* 393 U.S. 1092, 89 S.Ct. 863, 21 L.Ed.2d 784 (1969); *Bailes v. Colonial Press, Inc.,* 444 F.2d 1241, 1244 (5th Cir. 1971); *Earle R. Hanson & Associates v. Farmers Cooperative Creamery Co.,* 403 F.2d 65, 70 (8th Cir. 1968). The fiduciary concept is not limited to stock corporations but applies to membership organizations as well. *Post v. United States, supra,* 132 U.S.App.D.C. at 199, 407 F.2d at 329.

■ Like promoters or directors of a corporation, developers of a housing cooperative occupy a fiduciary position with respect to the individual members of the cooperative. The promoter of a cooperative apartment building must disclose completely the terms of the apartment sales and the extent of the financial obligation to be undertaken by the prospective apartment purchasers. *Northridge Cooperative Section No. 1 v. 32nd Avenue Construction Corporation,* 2 N.Y.2d 514, 527, 141 N.E.2d 802, 808, 161 N.Y.S.2d 404, 412, (1957) (*Northridge* ).

■ On December 6, 1974, when the various agreements between Associates and Cooperative were executed, the corporations shared a common majority of their boards of directors—defendants Laurins, Norman, and Baden. The trial court found that the promoter, defendant Laurins, dominated the boards of directors and that the other board members viewed themselves as employees of Laurin and had no concept of their roles as officers and directors of the respective corporate entities. Laurins prepared and executed the documents relating to the sale of the apartment building on behalf of both Cooperative and Associates. Defendants, as developers and directors of the cooperative, clearly owed fiduciary duties to its members.

The trial court found that those fiduciary duties commenced on December 1, 1974, the date on which it became clear that Laurins intended to sell his rights in the apartment building to Cooperative. Laurins testified that he recognized his fiduciary obligation as of December 6, 1974, the date on which Cooperative was incorporated and on which the various agreements between Associates and Cooperative were executed. Laurins and his codefendant Norman testified that they discharged their fiduciary obligations to Cooperative by "play-acting," a role-playing technique in which one defendant played the part of Cooperative and the other purported to represent the interests of Associates. The trial court, however, found that the play-acting "fail[ed] to rise to any acceptable level of performance of a fiduciary in behalf of his corporation" and characterized the play-acting as a means of determining just how far the developers could go. The trial court did not err in concluding that Associates failed to discharge its fiduciary duty to Cooperative.

IV

■ Appellants challenge the trial court's finding that defendants had not disclosed adequately the existence of two notes in favor of Associates totaling $105,700 and had not sustained the burden of showing the fairness of those transactions to Cooperative. As fiduciaries, defendants were required to disclose the extent of the financial undertakings to the members of Cooperative. *See Northridge, supra,* 2 N.Y.2d at 527, 141 N.E.2d at 808, 161 N.Y.S.2d at 412. The sales agreement signed by the members indicated that the total corporate indebtedness was limited to $945,000. Under the terms of the assignment of pur-

chase agreement, Associates agreed to advance any additional cash required by Cooperative to obtain title to the apartment building. The trial court found, however, that the existence of those two notes, which were signed by Laurins and attested to by Baden, was not disclosed adequately to prospective apartment purchasers. Therefore, it was not error to limit defendants' recovery on those notes to the amounts expended for closing and renovation expenses.[7]

Not only did the trial court find that defendants failed to disclose the existence of the two notes, but it also found that the terms of the notes had been significantly altered from those outlined in the assignment of purchase agreement to the detriment of Cooperative. The record amply supports those findings. The trial court's conclusion that the treatment of the notes constituted an overreaching was not erroneous.

### V

Defendants also failed to disclose the substantial increase in Cooperative's maintenance fees anticipated after its first year of operation. Defendant Laurins testified that by March 1975, he was aware of the expected increase in fees for the following years, but he failed to notify prospective purchasers of the increase. Consequently, Cooperative members were misled by the maintenance figure appearing in the 1975 budget. Two items of non-recurring income improperly were included in the 1975 maintenance budget: membership fees and first-year principal payments.[8] The trial court heard uncontradicted expert testimony that the inclusion of these items in income violated sound accounting principles. Additionally, the trial court found that the maintenance fee disclosure problem was exacerbated by the failure of defendant VAL Management Company to prepare the 1976 maintenance budget on time. The trial court concluded that in failing adequately to inform the cooperative members of the extent of their maintenance obligations, defendants breached their fiduciary duties to Cooperative. We find no error in that conclusion.

### VI

Although courts properly are reluctant to interfere with the freedom to contract, it may become necessary to refuse to enforce contractual provisions which operate contrary to public policy. In particular, careful scrutiny must be given to contractual provisions in situations in which one of the contracting parties acts as a fiduciary to the other party. Contracts which tend to encourage promoters to disregard the best interests of the corporation must be invalidated.

The trial court invalidated four provisions of the deed of trust which it found to be unconscionable and violative of public policy. First, the court held that the paragraph of the deed of trust which held Associates harmless from attorneys' fees was unenforceable.[9] Such provisions are

---

7. The trial court permitted a recovery in the amount of $30,700—$9,365.90 in closing costs and $21,334.10 in renovation expenses. The court did not err in refusing to reimburse Associates for the $75,000 down payment made to the Jawishes for the property. Although Associates agreed to make a cash down payment of $75,000 as part of the purchase price of $750,-000 from the Jawishes, the total purchase price agreed upon for the sale from Associates to Cooperative was $945,000, not $945,000 plus the $75,000 cash down payment.

8. See note 4 and accompanying text, supra.

9. That paragraph provided:
   Grantor shall save Beneficiary and Trustees harmless from all costs and expenses, including reasonable attorneys' fees, and costs of a title search, continuation of abstract and preparation of survey, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in and to which Beneficiary or Trustees may be or become a party by reason of this Deed of Trust, including but not limited to condemnation, bankruptcy, and administration proceedings, as well as any other of the foregoing wherein proof of claims is by law required to be filed or in which it becomes necessary to defend or uphold the terms of this Deed of Trust, and all money paid or expended by Beneficiary or Trustees in that regard, together with interest thereon from day of such payment at the rate provided in the note, shall be secured hereby

common in deeds of trust in the District of Columbia. *See In re Wolman*, 314 F.Supp. 703, 705 (D.Md.1970). These provisions generally are enforced in most jurisdictions, including this one. *Manchester Gardens, Inc. v. Great West Life Assurance Co.*, 92 U.S.App.D.C. 320, 325, 205 F.2d 872, 877 (1953). Courts do, however, have discretion to refuse to enforce such provisions in cases in which it would be inequitable to do so. In *Manchester Gardens*, the court stated:

> [W]here the merit or necessity of the creditor's claim or defense is successfully challenged, courts may decline to enforce attorney's fee provisions. * * * In no event should the sum allowed be so large as to amount to an undue penalty for taking one's grievance to the courts. [Id., at 326, 205 F.2d at 878 (footnote omitted).]

The trial court found that the challenged provision violated the general rule that each party is to bear its own costs of litigation. Although contracting parties generally are free to agree that attorneys' fees will be borne by a particular party, this provision must be evaluated in light of the fiduciary duty which Associates owed to Cooperative. Normally, attorneys' fees provisions which are enforced by courts are those which indemnify the creditor for attorneys' fees and collection costs if the creditor must institute suit when the debtor defaults on his obligation. In this case, the debtor (Cooperative) sued the creditor (Associates) for breach of fiduciary duty. This particular attorneys' fees provision, negotiated by Laurins on behalf of both Cooperative and Associates, served to insulate Associates from suit by Cooperative based upon a breach of fiduciary duty. Not only did this provision have the potential to function as a weapon used by the fiduciary to discourage litigation, but in this case defendants actually invoked the provision and offset its attorneys' fees against rental payments which it owed to Cooperative.

Furthermore, the trial court concluded that the attorneys' fees provision was too broad because it required Cooperative to pay Associates' legal fees regardless of the outcome of any litigation. Such a provision is impermissibly broad in that it permits "a party who breaches a contract to rely on the same contract to reimburse it for expenses, such as attorney's fees, which arose out of the breach." *First Atlantic Building Corp. v. Neubauer Construction Co.*, 352 So.2d 103, 106 (Fla.Dist.Ct.App.1977). Thus, we see no error in the trial court's conclusion that this contract clause, which served to foster and to insulate breaches of fiduciary duty by Associates, is illegal and void.

The trial court also voided the provision of the deed of trust which permitted Associates to accelerate the entire debt upon the sale or transfer of an apartment unit.[10] This clause, commonly referred to as a "due-on-sale" clause, provided that any refinancing by the new purchaser with Associates be made at the highest prevailing legal rate of interest. The trial court found no legitimate justification for the overreaching provisions of the clause and concluded that it constituted an unreasonable restraint on alienation.

and, shall be payable by Grantor to Beneficiary or Trustees, as the case may be, within five (5) days after demand.

10. That clause, in its entirety, stated:

In the event of the sale, conveyance, or transfer of all or any part of the Premises by the Grantor, Beneficiary may accelerate the entire principal due on the Note. In the event of a sale, conveyance, or transfer of an interest in the Grantor which includes the right of possession to a part of the Premises, Beneficiary may accelerate that portion of the total indebtedness secured hereby which said owner of an interest in Grantor has secured by executing his promissory note to Grantor pursuant to the provisions of paragraph 27 herein. Beneficiary may at his sole option elect to refinance said portion of this indebtedness for the Grantor if the sale of said interest is made to a person whom the Beneficiary, in its sole judgment, believes to be financially capable of supporting the portion of the indebtedness he will be responsible for. Said refinancing may be made at the highest prevailing legal rate of interest. The primary responsibility of repaying the refinanced portion or portions of the total indebtedness secured by this Deed of Trust shall remain with Grantor.

Although a due-on-sale clause may appear unexceptionable, it can severely restrict the mortgagor's ability to alienate his property freely. During inflationary periods, a purchaser's ability to assume the existing mortgage on a piece of property may determine whether he is willing and financially able to make the purchase. If he is forced to refinance the mortgage at a higher interest rate, the price that he is willing to pay for the property will decrease correspondingly. *See* Note, *Judicial Treatment of the Due-on-Sale Clause: The Case for Adopting Standards of Reasonableness and Unconscionability,* 27 Stan.L.Rev. 1109, 1113 (1975). This due-on-sale clause not only permitted the mortgagee to accelerate the debt upon transfer or sale of the property, but also mandated that the refinancing—available at the sole option of the mortgagee—be at the highest legal interest rate. Thus, the due-on-sale clause substantially impaired the mortgagor's ability to resell his property.

The quantum of restraint imposed on a mortgagor by a due-on-sale clause must be weighed against the mortgagee's legitimate interests in protecting his loan to determine whether the restraint is reasonable. *See generally,* Annot., 69 A.L. R.3d 713, 734 (1976). The mortgagee has a legitimate interest in protecting against the impairment of his security and the risk of default. When these interests are jeopardized by a change in ownership of the property, enforcement of a due-on-sale clause may be reasonable. *Wellenkamp v. Bank of America,* 21 Cal.3d 943, 950–51, 582 P.2d 970, 975, 148 Cal.Rptr. 379, 384 (1978); *Tucker v. Lassen Savings and Loan Association,* 12 Cal.3d 629, 638–39, 526 P.2d 1169, 1175, 116 Cal.Rptr. 633, 639 (1974); *Nichols v. Ann Arbor Federal Savings & Loan Association,* 73 Mich.App. 163, 169, 250 N.W.2d 804, 807 (1977). At trial, Associates claimed that the due-on-sale clause was a necessary control device to prevent "undesirables" from entering the cooperative. The trial

court did not err in concluding that this interest was protected adequately by admission procedures established by the by-laws and the rules and regulations of Cooperative.

Associates argues that the due-on-sale clause was necessary to protect its interest in maintaining its loan at current interest rates. A lender's desire to maintain its loan at current interest rates is not sufficient justification for enforcement of a due-on-sale clause. *Wellenkamp v. America, supra,* 21 Cal.3d at 952, 582 P.2d at 976, 148 Cal.Rptr. at 385; *Tucker v. Lassen Savings and Loan Association, supra,* 12 Cal.3d at 639 n.10, 526 P.2d at 1175 n.10, 116 Cal.Rptr. at 639 n.10; *Nichols v. Ann Arbor Federal Savings & Loan Association, supra,* 73 Mich.App. at 174, 250 N.W.2d at 809. We find no legitimate interests of Associates which justify the restraint on alienation of the apartment units resulting from the inclusion of the due-on-sale clause in the deed of trust.

Defendant Laurins structured the clause in his best interests as the lender rather than in the best interests of Cooperative, with respect to which he was a fiduciary. The due-on-sale clause protected his interest as a lender in maximizing his income from the loan and ignored Cooperative's interest in preserving the marketability of apartment units. Although we do not reach the general validity of due-on-sale clauses in deeds of trust in the District of Columbia, we agree with the trial court that in light of the fiduciary duty owed by Associates to Cooperative, this particular clause constituted an overreaching by Associates and is void as an unreasonable restraint on the alienation of the apartment units.

The trial court also invalidated the paragraph of the deed of trust which provided that Cooperative could not prepay the participating financing without Associates' written consent.[11] Any attempt to prepay the underlying financing would accelerate

11. That paragraph provided:
    Grantor covenants and agrees not to exercise any right or privilege of prepayment of

the Participating Financing and further covenants and agrees not to enter into any agreement with the holder of the Participating

the entire indebtedness. Associates argues that the clause was necessary to prevent Cooperative from refinancing the debt when interest rates fell and denying defendants the benefit of their bargain. This argument must be considered in conjunction with defendants' position on the due-on-sale clause.

On the one hand, the due-on-sale clause permitted Associates to take advantage of higher interest rates during times of inflation, while on the other hand, the prohibition against prepayment prevented Cooperative from refinancing its mortgage during times of lower interest rates. We conclude that this clause, like the due-on-sale clause, was included in the deed of trust without consideration of the best interests of Cooperative. The trial court did not err in finding that the prepayment clause was unenforceable because it unreasonably impaired the marketability of the apartment units.

■ Finally, the trial court refused to uphold that portion of the deed of trust which gave Associates the power to declare the $945,000 note due in full in ten days if the deed of trust were declared unenforceable by a court.[12] The court concluded that the provision "operated wholly to the bene-

fit of the defendants at the time that they owed plaintiffs a duty of loyalty which included a prohibition against overreaching." Like the attorneys' fees clause, this paragraph deprived Cooperative of its right of redress in court for violations of the fiduciary duty owed by Associates to Cooperative. The court did not err in concluding that the provision was unenforceable.

## VII

■ The trial court found that Associates failed to perform two of its contractual duties: to convey the units to purchasers and to perform its apartment preparation duties. Title to the apartment units was assigned to Associates for the sole purpose of selling those units to the public. Associates pledged 11 mutual ownership contracts as collateral for the October 6, 1976, and January 1978 promissory notes in clear violation of the assignment agreement. We are unpersuaded by defendants' argument that their actions in pledging the mutual ownership contracts were necessitated by mounting legal fees in the suit brought by Cooperative. The record amply supports the trial court's conclusion that "since the instigation of this litigation, Associates has maintained the unsold units for every pur-

Financing modifying or amending any of the provisions dealing with payment of principal or interest thereunder without the prior written consent of the Beneficiary. In consideration of the financing provided by Beneficiary under the provisions of this Deed of Trust, Beneficiary is irrevocably constituted sole and exclusive agent and attorney in fact for Grantor to arrange, at Beneficiary's sole discretion to refinance any or all of the Participating Financing or debt due under the terms of this Deed of Trust if such action is desired by Beneficiary. Such agency shall include the authorization of Grantor for Beneficiary to execute on Grantor's behalf all documents required by any lender to accomplish said refinancing. In the event the Grantor shall not have the power to delegate to Beneficiary the performance of any act required to effect said refinancing, Grantor agrees to execute any documents and provide any such affidavits or representations required of a lender to effect said refinancing. Failure of Grantor to cooperate in all respects with the refinancing of the Participating Interests or debt due hereunder shall be deemed a default under the terms and provisions of this Deed of Trust.

12. That paragraph provided:

Nothing herein contained nor any transaction related hereto shall be construed or shall so operate either presently or prospectively, (a) to require Grantor to pay interest at a rate greater than is now lawful in such case to contract for, but shall require payment of interest only to the extent of such lawful rate, or (b) to require Grantor to make any payment or do any act contrary to law; but if any clause and provision herein contained shall otherwise so operate to invalidate this Deed of Trust in whole or in part, then such clauses and provisions only shall be held for naught as though not herein contained and the remainder of this Deed of Trust shall remain operative and in full force and effect. If at any time any law or court decree prohibits the performance of any obligation undertaken herein by the Grantor, or provides that any amount to be paid by the Grantor must be credited against the Grantor's obligations under the Note, the Beneficiary will have the right, on ten (10) days prior notice to the Grantor, to require payment in full of the entire indebtedness secured hereby.

pose *but* that which is specified by the agreement."

The trial court partially rescinded the assignment agreement between the two parties and ordered defendants to reconvey title to the 11 unsold units to Cooperative. Appellants claim that the proper remedy would have been to rescind the agreement completely by returning the building to Associates and by cancelling Cooperative's indebtedness. We conclude, however, that in light of the oppressive actions by defendants, the court did not abuse its discretion in fashioning an equitable remedy.

### VIII

■■■ Appellants also challenge the award of attorneys' fees to Cooperative. Attorneys' fees generally are not awarded to either party in a lawsuit. The award of attorneys' fees is appropriate, however, "where a party brings or maintains an unfounded suit or withholds action to which the opposing party is patently entitled, as by virtue of a judgment or because of a fiduciary relationship, and does so in bad faith, vexatiously, wantonly, or for oppressive reasons." *1901 Wyoming Avenue Cooperative Association v. Lee*, D.C.App., 345 A.2d 456, 464–65 (1975); *accord, AFSCME v. Ball*, D.C.App., 439 A.2d 514 (1981); *Biggs v. Stewart*, D.C.App., 418 A.2d 1069, 1071 n.7 (1980); *Bay General Industries, Inc. v. Johnson*, D.C.App., 418 A.2d 1050, 1057 n.20 (1980); *Trilon Plaza Co. v. Allstate Leasing Corp.*, D.C.App., 399 A.2d 34, 37 (1979); *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association, Inc.*, D.C.App., 385 A.2d 20, 24 (1978); *F. W. Berens Sales Co. v. McKinney*, D.C.App., 310 A.2d 601, 602 (1973); *Continental Insurance Co. v. Lynham*, D.C.App., 293 A.2d 481, 483–84 (1972). After an examination of the voluminous record (nearly 5,000 pages) in this overlitigated case (the full history of which could not feasibly be set forth in this opinion), we conclude that the trial court did not abuse its discretion in awarding attorneys' fees to Cooperative.

### IX

■■■ Appellant Gold Depository and Loan Company challenges the post-judgment issuance of an injunction barring the public sale of the 11 apartment units which it held as security for the October 6, 1976, and January 5, 1978, promissory notes which had been issued by Associates. GDLC claims that the prohibition on the sale of the remaining unsold apartment units did not apply to the lien which it held on the units. It argues that in foreclosing on the promissory notes (which were in default), it was not acting in concert with the defendants named in the injunction, but merely was protecting its own security interest.[13]

The pledge of the 11 mutual ownership contracts as collateral for the promissory notes by Associates clearly contravened the purpose of the assignment agreement. *See* Part VII, *supra*. The promissory notes then were transferred to a series of Laurins-controlled entities. *See* Part I, *supra*. The trial court found that CIB (one of the last holders) was a continuation of CMI, a named defendant in the Superior Court litigation, through its sole general partner, Real Estate Equity Management. *See* notes 1 and 2, *supra.* CIB then transferred the promissory notes to GDLC, its wholly-owned subsidiary and another Laurins-controlled entity. Thus, the record supports the trial court's conclusion that GDLC, a wholly-owned subsidiary of a continuation of a named defendant, was in privity with defendant Laurins and, therefore, was bound by the court's order. The attempted foreclosure by GDLC was an effort by defendants to circumvent the court's order enjoining defendants and all parties in active concert from selling or leasing the apartments in question. The trial court did not err in prohibiting the public sale of the 11 units by GDLC.

### X

Also challenged is the trial court's finding that defendant Laurins was in civil con-

---

**13.** Appellant *GDLC* asserts several other grounds of error which we find to be without merit.

tempt of the court's final order for his refusal to turn over title to the 11 apartment units to Cooperative. However, Laurins purged himself of contempt by returning the mutual ownership contracts to Cooperative. On October 13, 1979, the trial court set aside the contempt order. The appeal of the contempt citation accordingly is moot. *Marshall v. Whittaker Corp., Berwick Forge & Fabricating Co.*, 610 F.2d 1141, 1145 (3d Cir. 1979); 15A Cyclopedia of Federal Procedure § 87.104 (3d ed. Supp. 1981).

## XI

In summary, the trial court did not err in concluding that defendants breached their contractual and fiduciary duties. Accordingly, we affirm the trial court's rulings on liability and damages. We also affirm the issuance of an injunction barring the sale of apartment units by GDLC. The appeal of defendant Laurins' civil contempt citation is moot.