Argued and submitted June 1, resubmitted In Banc October 3, reversed and remanded with instructions October 10, reconsideration denied December 14, 1984, petition for review denied January 8, 1985 (298 Or 470)

## UNITED SAVINGS BANK,
formerly First Federal Savings
and Loan Association of Salem,
*Respondent,*

*v.*

## ZANDOL et al,
*Appellants,*
## U.S. CREDITCORP,
*Respondent.*

(129,652; CA A29754)

689 P2d 335

Kathleen A. Evans, Salem, argued the cause for appellants. On the briefs were William C. Crothers, Jr., and Crothers & Crandall, Salem.

Richard H. Allen, Salem, argued the cause for respondent. With him on the brief was Allen, Stortz, Fox & Susee, Salem.

Mark B. Comstock, Salem, waived appearance for respondent U.S. Creditcorp.

BUTTLER, J.

## BUTTLER, J.

Plaintiff, mortgagee, brought this action to foreclose its mortgage after defendants Zandol, mortgagors, sold the mortgaged real property on contract to defendant Smith. Defendant U.S. Creditcorp cross-claimed to foreclose its second mortgage on the real property; it and the Zandols stipulated that if plaintiff is entitled to foreclosure, so is U.S. Creditcorp. From a judgment foreclosing both mortgages, the Zandols appeal. U.S. Creditcorp did not appear in this court, and we consider only the mortgage to plaintiff in this opinion.

In 1978, the Zandols mortgaged an apartment house owned by them to plaintiff to secure a loan. That mortgage contained what both parties agree is a "due-on-sale" clause, which provided:

"The loan secured by this mortgage is personal to the mortgagor. If the loan is made upon property occupied or to be occupied by mortgagor, such occupancy is a material inducement to mortgagee to make said loan. If title to said property shall pass from mortgagor by deed or otherwise or said property shall be sold on contract, or if the property shall be vacated by the mortgagor, then such change in title or occupancy shall be deemed to increase the risk of mortgagee and mortgagee may declare the entire unpaid balance immediately due and payable or, at the mortgagee's sole option, mortgagee may consent to said change in title or occupancy and may increase the interest rate of said loan not to exceed two percent per annum to compensate for such increased risk. Such increase in interest shall entitle the mortgagee to increase the monthly payments on the loan so as to retire the obligation in the remaining term of the original note and mortgage."

On December 15, 1980, the Zandols entered into a land sale contract to sell the apartments to defendant Smith, without obtaining the prior consent of plaintiff. On February 26, 1981, plaintiff learned that the property had been sold, and on March 19 it sent defendants a modification agreement, which not only increased the interest rate by 2 percent and provided for a service fee, as provided in the mortgage, but also shortened the maturity date from June 1, 1993, to April 1, 1984. Because the new maturity date was 20 months earlier than the maturity date provided in the Zandols' contract with Smith, the Zandols would not agree to the proposed modification. Accordingly, in May, 1981, plaintiff accelerated the full

balance due under its mortgage and commenced this foreclosure proceeding.

The only claimed default in the mortgage was the Zandols' sale to Smith without the bank's consent. After this proceeding was commenced and until December, 1981, when it became apparent to the Zandols that their tender of payments would be useless, they tendered each monthly payment as it became due, which plaintiff rejected. Prior to trial, the Zandols tendered all amounts necessary to bring the loan current ($53,275.35), which plaintiff also rejected. In August, 1982, the Zandols agreed with Smith to rescind the contract of sale, and they regained possession of the property.

The underlying question on appeal is whether the quoted mortgage provision permits plaintiff to insist, as a condition for its consent to the sale, on a modification of the loan more onerous than that provided in the mortgage. The Zandols do not contend that the "due-on-sale" clause is invalid; they recognize that the Garn-St Germain Depository Institutions Act of 1982, Pub L 97-320, 96 Stat 1469 (1982) (Garn Act), specifically authorizes the use of such a provision. They contend, however, that under that act, as well as the common law, plaintiff should be bound strictly by the terms of the provision that it prepared and included in its printed mortgage form.

If the mortgage had provided only that a sale of the property without the mortgagee's consent permits the mortgagee to accelerate the loan, there is no doubt that the bank would have been entitled to call the loan. Further, if it had done so, there is no reason why it could not have negotiated for refinancing the loan that it had accelerated. If the mortgagors failed to refinance, either with the mortgagee or a third party, the bank could have proceeded to foreclose.

However, the mortgage provision here is not that straightforward. It specifically provides that, if the property is sold, the mortgagee may, at its option, *either* accelerate the loan *or* consent to the sale for a specified maximum price to the mortgagor: an increase in the interest rate not to exceed 2 percent, with a corresponding increase in the amortization payments to retire the loan "in the remaining term of the original note and mortgage." We believe that the most reasonable reading of the provision as a whole is that, if the

mortgaged property is sold, the mortgagee may invoke the presumption contained in the provision that the sale increases the risk (the loan being personal to the mortgagor), and may either accelerate the loan for that reason *or* may consent to the sale within the limitations expressed in the mortgage. If it indicates its willingness to consent, it is limited to the mortgage terms in the price it may exact for its consent.

Here, within three weeks after learning of the sale of the property, the mortgagee sent the mortgagors a modification agreement containing more onerous terms than those provided in the mortgage, and stated that it would consent to the sale when the modification agreement was executed by the Zandols. By that action, it evinced its willingness to consent to the sale rather than to accelerate the loan. When it exercised that option, it was bound to demand no more than the limits expressed in the mortgage for granting its consent. If, as here, the mortgagors are willing to pay the maximum price expressed in the mortgage in order to obtain the mortgagee's consent, the mortgagee, having elected to consent, must accept those terms and may not then accelerate the loan.

■　　For us to accept the mortgagee's contention, as did the trial court, that its insistence on *any* modification, no matter how onerous, is an intermediate step included in the harsher remedy of acceleration would require us to ignore the express language of the mortgage, which we may not do. ORS 42.230.[1] Presumably that language has a purpose, and the mortgagors were entitled reasonably to rely on what it seems to say; otherwise it is highly misleading. If it is ambiguous, it is construed against the mortgagee as the drafter of the provision. *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 577 P2d 477, *cert den* 439 US 1051 (1978). Plaintiff would have us interpret the provision to mean that the mortgagee has complete freedom to impose whatever conditions it wishes on its consent to a sale of the mortgaged property—in other

---

[1] ORS 42.230 provides:

"In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all."

words, to interpret the provision, which it drafted, in its own favor.

■      Not only would that construction be contrary to established rules of construction, it would be contrary to the provisions of the Garn Act.[2] Section 341(b)(2) of that law provides:

> "Except as otherwise provided in subsection (d), the exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by the contract."

Plaintiff also suggests that there is a distinction between a mortgagor's requesting the mortgagee to consent to a prospective sale and the mortgagee's choice of action after a sale occurs before its consent has been obtained. If there should be such a distinction, the mortgage provision fails to draw it.

---

[2] In relevant part, section 341 of the Garn Act provides:

"(a)  For the purpose of this section—

"(1)  the term 'due-on-sale clause' means a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent;

"* * * * *

"(b)(1)  Notwithstanding any provision of the constitution or laws (including the judicial decisions) of any State to the contrary, a lender may, subject to subsection (c), enter into or enforce a contract containing a due-on-sale clause with respect to a real property loan.

"(2)  Except as otherwise provided in subsection (d), the exercise by the lender of its option pursuant to such a clause shall be exclusively governed by the terms of the loan contract, and all rights and remedies of the lender and the borrower shall be fixed and governed by the contract.

"(3)  In the exercise of its option under a due-on-sale clause, a lender is encouraged to permit an assumption of a real property loan at the existing contract rate or at a rate which is at or below the average between the contract and market rates, and nothing in this section shall be interpreted to prohibit any such assumption.

"* * * * *

"(c)(2)(A)  For any contract to which subsection (b) does not apply pursuant to this subsection, a lender may require any successor or transferee of the borrower to meet customary credit standards applied to loans secured by similar property, and the lender may declare the loan due and payable pursuant to the terms of the contract upon transfer to any successor or transferee of the borrower who fails to meet such customary credit standards."

■ In short, we see no reason why the mortgagee should not be held strictly to the language it provided in its printed mortgage form, just as the mortgagor should be. Both the Garn Act and the common law require that result. It follows that the judgment must be reversed. Given the fact that the Zandols' sale to Smith has been rescinded, there is no occasion to modify the loan in any respect. Accordingly, the judgment for plaintiff should be reversed and its action dismissed on the condition that the Zandols bring the loan current within a reasonable time to be specified by the trial court on remand. Because the stipulation between U.S. Creditcorp and the Zandols is that the second mortgage may not be foreclosed if plaintiff's mortgage is not, the judgment foreclosing U.S. Creditcorp's mortgage should also be reversed and its foreclosure action dismissed on the condition that that loan be brought current within a reasonable time to be determined by the trial court on remand.

Reversed and remanded with instructions to: (1) dismiss plaintiff's action if the Zandols bring plaintiff's loan current within such reasonable time as the trial court may determine; (2) dismiss U.S. Creditcorp's action if the Zandols bring its loan current within such reasonable time as the trial court may determine.