Argued and submitted March 19, 1984, affirmed February 6, reconsideration denied
May 22, petition for review denied May 29, 1985 (299 Or 203)

## UNITED SAVINGS BANK MUTUAL,
formerly First Federal Savings & Loan,
*Respondent,*

*v.*

## BARNETTE et al,
*Appellants.*

(129,187; CA A28397)

695 P2d 73

Michael J. Martinis, Salem, argued the cause for appellants. On the brief were Norman F. Webb and Webb & Martinis, Salem.

Richard H. Allen, Salem, argued the cause for respondent. With him on the brief was Allen, Stortz, Fox & Susee, Salem.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Young, Judge.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendants Barnettes appeal from a decree of foreclosure, contending that the trial court erred by 1) finding that their sale on contract of certain mortgaged property triggered the due-on-sale clause contained in the mortgage, 2) allowing automatic enforcement of the due-on-sale clause and 3) striking certain equitable defenses. We affirm.

In October, 1970, plaintiff loaned $74,000 to George Suniga for the purpose of constructing a seven-unit apartment building. Suniga signed a promissory note in which he agreed to repay the loan at an interest rate of 8.75 percent. The loan was to be amortized over 25 years, with the final payment due on July 1, 1996. Suniga also signed a mortgage, drafted by plaintiff, granting it a security interest in the property. The mortgage contained a due-on-sale clause:

> "The loan secured by this mortgage is personal to the mortgagor. If the loan is made upon property occupied or to be occupied by mortgagor, such occupancy is a material inducement to mortgagee to make said loan. If title to said property shall pass from mortgagor by deed or otherwise or said property shall be sold on contract, or if the property shall be vacated by the mortgagor, then such change in title or occupancy shall be deemed to increase the risk of mortgagee and mortgagee may declare the entire unpaid balance immediately due and payable or, at mortgagee's sole option, mortgagee may consent to said change in title or occupancy and may increase the interest rate of said loan not to exceed two percent per annum to compensate for such increased risk. Such increase in interest shall entitle the mortgagee to increase the monthly payments on the loan so as to retire the obligation in the remaining term of the original note and mortgage."

In 1971, the Barnettes purchased the apartment building from Suniga. They signed an assumption agreement with plaintiff that bound them to the terms of the original note and mortgage.

In 1980, the Barnettes and defendant Moore entered into a land sale contract for the apartment building. On learning of the sale, plaintiff contacted the Barnettes, stating that it would consent to the sale if they would agree to both an increase in the interest rate from 8.75 to 10.75 percent and a reduction in the remaining term of the loan from 15 to five

years. The Barnettes refused either to pay the increased interest rate or to reduce the term of the loan. Plaintiff then accelerated the entire remaining balance of the loan and instituted this foreclosure proceeding.

The trial court granted plaintiff a decree of foreclosure, finding that the due-on-sale clause was "clear and unambiguous and set forth the rights and duties of the parties relative to a sale by contract." The court also held that the clause was enforceable without plaintiff having to show that the installment sale actually impaired its security. This appeal followed.

■ As their first assignment of error, the Barnettes contend that the due-on-sale clause was not triggered by their installment sale of the apartment building to Moore. According to them, the due-on-sale clause, by its terms, only applies to "property occupied or to be occupied by the mortgagor." They argue that, because the mortgaged property in this case was rental property held for investment purposes only, the entire clause has no application to them. We disagree. We do not read the second sentence of the due-on-sale clause as creating a requirement of mortgagor occupancy before the rest of the clause applies. It simply states plaintiff's position concerning occupancy *if* the mortgaged property is to be occupied by the mortgagor. If it is not, then the sentence merely has no application; it does not render inapplicable the rest of the clause.

The Barnettes also argue that, because their sale on contract to Moore did not involve a change in legal title, plaintiff was not entitled to invoke the due-on-sale clause. In support of their contention they point to the following language:

> "If title to said property shall pass from mortgagor by deed or otherwise or said property shall be sold on contract, or if the property shall be vacated by the mortgagor, *then such change in title* or occupancy shall be deemed to increase the risk of mortgagee and mortgagee may declare the entire unpaid balance immediately due and payable * * *." (Emphasis supplied.)

They urge us to interpret this clause to mean that plaintiff could exercise its option to accelerate if the property were sold on contract and only when *legal* title to it changed. Reading

the provisions of the clause in context, however, we reach a different conclusion. When property is sold on contract, even though legal title to the property does not transfer to the purchaser until the contract is entirely performed, the purchaser does acquire an equitable title. In order to give the "sold on contract" language any effect, the phrase "change in title" must be read to include a change in either the legal or the equitable title. To interpret it otherwise would mean that plaintiff could accelerate only after all payments under the land sale contract had been tendered; that would be a patently unreasonable reading. We hold that the contract sale to Moore entitled the bank to accelerate.

■        As their next assignment of error, the Barnettes contend that the trial court should not have permitted automatic enforcement of the due-on-sale clause. They urge this court to adopt the rule set forth by the California Supreme Court in *Tucker v. Lassen Savings and Loan Association,* 12 Cal 3d 629, 116 Cal Rptr 633, 526 P2d 1169 (1974). In *Tucker,* the court held that a lender cannot enforce a due-on-sale clause simply because the mortgagor enters into a land sale contract for the sale of the security, but that it must demonstrate that such a sale actually impairs its security in some way. The California court held that, unless an impairment can be established, the due-on-sale clause is an unreasonable restraint on alienation.

Since the *Tucker* decision, the due-on-sale clause issue has arisen in numerous jurisdictions. Three lines of analysis have emerged. Some jurisdictions have adopted the California approach. *See, e.g., Patton v. First Fed. Sav. & Loan Ass'n., Etc.,* 118 Ariz 473, 578 P2d 152 (1978); *State ex rel. Bingaman v. Valley Sav. & Loan,* 97 NM 8, 636 P2d 279 (1981); *Continental Fed. Sav. & Loan Ass'n. v. Fetter,* 564 P2d 1013 (Okla 1977); *Bellingham First Fed. v. Garrison,* 87 Wash 2d 437, 553 P2d 1090 (1976). Other courts have held that the clause creates a restraint on alienation, but does not do so unreasonably. *See, e.g., Income Realty & Mortg. v. Columbia Sav. & Loan,* 661 P2d 257 (Colo 1983); *Mills v. Nashua Fed. Sav's and Loan Assoc.,* 121 NH 722, 433 A2d 1312 (1981); *Crockett v. Savings & Loan Assoc.,* 289 NC 620, 224 SE2d 580 (1976); *Redd v. Western Sav. & Loan Co.,* 646 P2d 761 (Utah 1982). Still others have held that the due-on-sale clause is not a restraint on alienation at all. *Society for Sav. v. Bragg,* 38 Conn Sup 8, 444 A2d 919 (1981); *see, e.g., Lake v. Equitable*

*Sav. & Loan Ass'n.,* 105 Idaho 923, 674 P2d 419 (1983); *Occidental Sav. & Loan Assn. v. Venco Partnership* 206 Neb 469, 293 NW2d 843 (1980); *First Federal Sav. & Loan v. Clark Inv. Co.,* 322 NW2d 258 (SD 1982).

Having examined the rationale underlying these three lines of cases, we conclude that the restraint on alienation created by the due-on-sale clause, if any, is reasonable. Even though it may affect the ease with which one may dispose of one's property, we hold that such a result is reasonable in the light of countervailing policy considerations. *See Income Realty & Mortg. v. Columbia Sav. & Loan, supra,* 661 P2d at 261-263, for a discussion of the substantial benefits that due-on-sale clauses have on interest rates and loan availability. *See also Dunham v. Ware Savings Bank,* 384 Mass 63, 423 NE2d 998 (1981). As stated by the Utah Supreme Court:

> "We are convinced that the contest between the competing interests, both of which are supported in their positions by valid and logical arguments, is best left to the market place to determine. Both lenders and borrowers have to contend with the problem of inflation which has confronted this country in recent years, and there is no valid reason why the court should interfere with the bargaining process between them wherein the lender seeks to protect itself on a long-term loan against an uneconomic investment. As pointed out in many of the cases, the due-on-sale clause is not triggered until there is a sale of the property. So long as the original borrower retains the full beneficial interest of the property and remains in possession, his loan is not disturbed although the ravages of inflation have made it highly unprofitable to the lender. It is only when the borrower seeks to sell the property, either on an installment contract or outright, that the lender by its contract is given the right to renegotiate the interest rate. While all have sympathy with anyone who is forced to pay a higher rate of interest, we would be closing our eyes to reality if we ignored the effect of inflation. * * * Lenders must be able to compete with inflation or they will not long remain in existence. It was a proper subject of bargaining between the lender and borrower. That is all the courts are concerned with. We eschew taking sides in a battle of economic forces." *Redd v. Western Sav. & Loan Co., supra,* 696 P2d at 766.

We agree with that analysis. Accordingly, the trial court properly allowed automatic enforcement of the due-on-sale clause

in the present case.[1]

■ Finally; the Barnettes contend that the trial court erred by striking several of their affirmative defenses. A review of the record, however, convinces us that only one of the stricken defenses merits discussion. The stricken language reads:

"XXX

"The clause in said Mortgage by which Plaintiff attempts to foreclose upon Defendants Barnettes property was intended by the parties to guarantee Plaintiff's security interest. Plaintiff attempted to use that clause to raise the interest rate of the loan secured by said Mortgage and to accelerate payment of the remaining balance of said loan.

"XXXI

"Plaintiff's use of said clause goes beyond the bounds of what is customary and reasonable and is inequitable and contrary to good conscience."

It is important to understand how limited the Barnettes' theory is. In *United Savings Bank v. Zandol,* 70 Or App 239, 689 P2d 335 (1984), we held that an identical mortgage provision limited plaintiff's options on a resale either to consenting to the sale and increasing the interest rate or refusing consent and accelerating the loan and that, when it offered to consent in return for *both* an increase in the interest rate and a reduction in the remaining term, it lost the right to refuse to consent. In that case, however, the defendants had specifically argued that the parties' contract did not permit the action plaintiff took. Here, by contrast, defendants do not challenge plaintiff's action as being contrary to the specific language of the parties' contract. Because the theory on which we decided *Zandol* was not pleaded or argued, we decline to reverse the trial court on that basis.

The argument the Barnettes do advance is that plaintiff engaged in inequitable conduct by sending them a "Loan

---

[1] Plaintiff argues that the Depository Institutions Act of 1982, 12 USC § 1701j-3, applies to the due-on-sale clause at issue in this case and is dispositive. Plaintiff is mistaken. Section 1701j-3(c)(2)(B) specifically states that the act does not apply to a transfer which occurred before the date of enactment of the act. The transfer in this case occurred on April 1, 1980, and the act became effective on October 15, 1982. It, therefore, is inapplicable.

Modification Agreement" that essentially provided that, unless they agreed to increase the interest rate by 2 percent and to reduce the remaining term of the loan from 15 to five years, plaintiff would exercise its option under the mortgage to accelerate the entire remaining balance. We agree that such conduct undoubtedly put pressure on the Barnettes to make a decision, but we do not find it inequitable.

Under the terms of the mortgage, plaintiff had the right to

> "declare the entire unpaid balance immediately due and payable or, at mortgagee's sole option, mortgagee may consent to such change in title or occupancy and may increase the interest rate of said loan not to exceed two percent per annum * * *."

We fail to see how offering the Barnettes the opportunity to choose a less onerous remedy than one plaintiff had the right to enforce under the mortgage—assuming that the offer did not violate the contract (and the Barnettes, as noted, did not argue that it did)—constitutes inequitable conduct. The trial court, therefore, did not err in granting plaintiff's motion to strike this equitable defense.

Affirmed.