21 F.3d 422
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 INTERFEROMETRICS, INCORPORATED, Plaintiff-Appellant,
and
Dino A. LORENZINI; Dennis E. Fecteau, Counter-Claimants,
v.
Mobile Communications Holdings, Incorporated; David
Castiel; Ellipsat International, Incorporated;
Ellipsat Corporation, Defendants-Appellees.
 No. 93-1773.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 9, 1994.
Decided April 15, 1994.
 
 Appeal from the United States District Court for the Eastern District o Virginia, at Alexandria. John A. MacKenzie, Senior District Judge. (CA-92-1211-A)
 Howard V.B. Sinclair, Arent, Fox, Kintner, Plotkin & Kahn, Vienna, VA, for appellant.
 Bernhardt Karp Wruble, Verner, Liipfert, Bernard, McPherson & Hand, Chartered, Washington, D.C., for appellees. On brief Darragh J. Davis, Jason Scott Palmer, Arent, Fox, Kintner, Plotkin & Kahn, vienna, VA, for appellant.
 Richard H. Saltsman, Glenn R. Moore, Verner, Liipfert, Bernard, McPherson & Hand, Chartered, WA, D.C., Michael H. Stone, Washington, D.C., for appellees.
 E.D.Va.
 AFFIRMED.
 Before LUTTIG, Circuit Judge, CHAPMAN, Senior Circuit Judge, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 This appeal arises from a dispute between Interferometrics, Inc. ("IF") and Mobile Communications Holdings, Inc. ("MCHI"), involving a partnership the parties formed in 1990. A partnership agreement was executed, whereby the Ellipsat Corporation ("Ellipsat") was founded, giving MCHI an 80% stake and IF a 20% stake in this new venture. The agreement provided that each party would have a seat on Ellipsat's board, and a third member would later be appointed. After a number of disagreements, IF brought this action against MCHI, MCHI's CEO, David Castiel, Ellipsat, and Ellipsat International alleging breach of contract and fiduciary obligations, trademark and trade name infringement, and unfair competition in connection with the formation and operation of Ellipsat. The district court found that the defendants had not breached the partnership agreement nor had they breached their fiduciary duties because IF essentially deadlocked the decision making process of the partnership and did not provide the necessary technical assistance that the partnership required. The court also found that the defendants had not violated patent, trademark and trade name law. Finding no error either in the district court's factual findings or its conclusions of law, we affirm.
 
 I.
 
 2
 On October 23, 1990, David Castiel, the CEO of MCHI, approached IF with the idea of constructing an elliptical orbit satellite system, known as Ellipso, the final objective being to establish a communication system for cellular phone conversations. Castiel sought IF's assistance because he believed IF had technical capabilities that were necessary for the construction of the system and for completion of the Federal Communications Commission ("FCC") application, which needed to be submitted in a matter of days.
 
 
 3
 The two parties orally agreed to a partnership in the proposed Ellipsat Corporation, with MCHI getting a 90% share and IF a 10% share. On November 2, 1990, IF and Castiel, through his holding company, MCHI, entered into a final and signed partnership agreement covering the venture. The share positions were altered, with MCHI having a 80% stake and IF a 20% stake. The agreement also provided IF and MCHI with one board member each for at least three years from the date of incorporation. Castiel and Dr. Dino Lorenzini, an IF executive, were named as board members and they were to agree on any additional members.[1] The agreement also provided that IF would select "the most appropriate Interferometrics satellite class that is determined in the orbital system hereof" to be used in the Ellipso system.
 
 
 4
 As the parties were forming the partnership, they were also preparing the FCC application for the Ellipso system. For filing purposes, the Ellipso system was divided into two constellations, Ellipso I and Ellipso II. The Ellipso I application was filed on November 2, 1990 and proposed a system of six satellites rotating around the earth in an elliptical orbit. The application referred to the use of IF's "eyesat" satellite. Castiel and Lorenzini made a presentation to the FCC in support of the Ellipso I application but some FCC members pointed out technical errors in the application and asked for a clarification. Castiel and Lorenzini promised that the clarification would be ready in a few weeks.
 
 
 5
 In need of financing to cover Ellipsat's mounting expenses, Castiel initiated an agreement with Venture First, a venture capital fund, giving Venture First the exclusive right to raise capital for Ellipsat. Castiel did not get board approval of this agreement. Andrew Grubbs, of Venture First, met with Dennis Fecteau, the president of IF, to discuss Venture First's capital investment in Ellipsat. Fecteau insisted that IF owned 50% of Ellipsat and told Grubbs that IF was not interested in the capital investment offered by Venture First. Venture First, concerned about Fecteau and Castiel's working relationship, decided to deal exclusively with Castiel and MCHI. As a precondition of Venture First's investment in MCHI, Castiel agreed that Ellipsat would not own the rights in the Ellipso system, but that Castiel, who owned said rights would assign said rights in the system to MCHI.
 
 
 6
 After several unsuccessful attempts to involve Lorenzini and IF in the day to day operations, Castiel decided to proceed without their help. He completed and mailed the FCC clarification of Ellipso I on January 30, 1991, over a month late. In June 1991, Castiel filed the FCC application for the Ellipso II system, again without the help of Lorenzini and IF, and paid the filing fee of $48,000 with money provided by Venture First. The Ellipso II application proposed the addition of 18 satellites.[2]
 
 
 7
 On August 10, 1991, after receiving several inquiries from international companies about providing Ellipso's services to areas outside the United States, MCHI formed Ellipsat International, Inc. Ellipsat International was created without informing IF. In October 1991, MCHI and Skylink Communications, a Canadian company, entered into an agreement to provide satellite communications through the Ellipso system to Canada. In November 1991, MCHI, Ellipsat International and Tecelmex, a Mexican corporation, entered into a similar agreement to provide mobile communications to Mexico. In January 1992, MCHI, Ellipsat International and Israel Aircraft Industries, Ltd. entered into an agreement to provide Ellipso's services to Israel. In September 1992, MCHI, Ellipsat International and Cairncross Holdings, an Australian company, entered into an agreement to provide Ellipso's services to Australia.
 
 
 8
 With regard to the satellites, the partnership agreement provided that "Interferometrics will provide reasonable technical support to Ellipsat during and after the filing in the form of ... selection of the most appropriate Interferometrics satellite class that is determined in the orbital system hereof." In light of the difficulties between IF and MCHI, MCHI held discussions with Israel Aircraft Industries, McDonnell Douglas and Fairchild Space and Defense Corporation concerning the construction of the appropriate satellites for the Ellipso system. Agreements were later reached with Israel Aircraft, as the prime contractor, and Fairchild, as the source of satellites.
 
 
 9
 On August 25, 1992, IF filed its complaint against MCHI, Ellipsat, Ellipsat International, and Castiel, alleging breach of contract (Count I), breach of fiduciary duties (Count II), trademark infringement (Count III), trade name infringement (Count IV), false designations of origin and false advertising (Count V), and unfair competition (Count VI). On September 9, 1992, the district court granted an agreed to temporary restraining order ("TRO") prohibiting the defendants from further participation in the alleged unlawful conduct. The TRO was later extended to trial. In the TRO, the parties agreed to an amendment of the November 2, 1990 partnership agreement, which provided that (1) until IF and MCHI could agree upon a third member of the board of Ellipsat, counsel for both parties would try to agree upon an impartial third director, who, "upon his or her assumption of the directorship, shall serve until the director agreed upon by IF and MCHI assumes the directorship;" and (2) IF and MCHI would be entitled to a seat on Ellipsat's board, for so long as said party owns any stock in Ellipsat. This later provision, however, would not become effective until the assumption of the directorship by a third director of Ellipsat, as provided for in the amended partnership agreement. MCHI proposed two directors, who were both suitable to IF, however, the directors conditioned their acceptances on the court's resolution of several issues.
 
 
 10
 The case proceeded to trial. On May 17, 1993, the district court entered its final order. First, the court found that the conditional acceptances of the two directors did not trigger the extension of the term of the existing directors beyond October 31, 1993, nor bring to bear the proposal of a director's term of office equal to the period of stock ownership. The court determined that because a third director had yet to be appointed, the provisions of the proposed amendment did not become effective. The amendment, therefore, failed because the conditions were not performed within a reasonable time.
 
 
 11
 The court found that the partnership agreement did not expressly prohibit the dilution of IF's interest, therefore IF could not block Ellipsat's effort to market additional shares if necessary to achieve corporate purposes.
 
 
 12
 The court also found that MCHI has the right to pursue contracts outside the United States because the partnership agreement provided that "Interferometrics and MCHI wish to promote the advent of cost effective state-of-the-art communications capabilities to the service of personal mobile communications and radio determination in the United States of America." (emphasis in order). Because the agreement is clear and unambiguous, the court held that MCHI is free to pursue business outside the United States.
 
 
 13
 The court determined that the Ellipso system was Castiel's idea, giving him the rights to any patents issued for the Ellipso system. IF argued that since the Ellipso I and II applications to the FCC stated that Ellipsat was applying for the patent, Castiel had acknowledged that any patent rights belonged to Ellipsat and not himself. However, the district court found that Castiel did this to ward off potential competitors and that Castiel did not intend to expressly assign the patent rights to Ellipsat. The court did find that the language in the partnership agreement provided Ellipsat with an implied irrevocable license to use the Ellipso system in the United States.
 
 
 14
 As to the trademark and trade name counts, the court found that Ellipsat has an implied license to use the trademark "Ellipso" and the trade name "Ellipsat." The partnership agreement stated that MCHI conceived the Ellipso system but that Ellipsat would be formed to provide mobile communications. The court determined that such language established an implied license by MCHI to Ellipsat to use Ellipso and related marks in the United States. Because MCHI con ceived the Ellipso idea, the court determined that MCHI has a right to the trademark. Under the "related companies" doctrine,[3] Castiel and MCHI did not infringe any of Ellipsat Corporation's rights by forming Ellipsat International. Since MCHI has the right to the patent, trademark and trade name rights, and Ellipsat was a "related company," the court found no Lanham Act violations.
 
 
 15
 The court also determined that the language in the partnership agreement does not give IF the exclusive right to furnish the satellites for the Ellipso system, and the purchase of such equipment is best left to the judgment of the Ellipsat board. The court drew additional conclusions that are not relevant to this appeal.
 
 II.
 
 16
 We first address IF's argument that the district court erred in holding that the amendment to the partnership agreement failed. This is a factual determination that we will review for clear error. Miller v. Mercy Hosp., Inc., 720 F.2d 356, 360-61 (4th Cir.1983), cert. denied, 470 U.S. 1083 (1985).
 
 
 17
 On September 24, 1992, the parties agreed to an amendment to the partnership agreement. MCHI and IF would each be represented by a director as long as both parties maintained an interest in Ellipsat. The amendment provides "[t]he provisions of this paragraph 2 [the entitlement to directorships] will be effective upon the assumption of the directorship of a third director...." The agreement was reached, with the encouragement of the district court, to provide Ellipsat with a third director and move the partnership out of deadlock. However, the parties only received the conditional acceptance of two prospective board members which did not solve the problem, since neither would assume responsibility until the parties' dispute was legally resolved. Since the purpose of the amendment was frustrated, the court decided that a reasonable time had elapsed when the case proceeded to trial and the amendment never became effective and was no longer binding on the parties. We find no error in these findings.
 
 III.
 
 18
 IF argues that MCHI breached fiduciary obligations owed to Ellipsat. The parties have stipulated that Ellipsat was formed in the District of Columbia, and therefore under traditional conflicts principles, the law of that jurisdiction is applied. Under District of Columbia law, all directors and officers owe the corporation and its shareholders the fiduciary duties of loyalty and care, which require them to act in utmost good faith in managing the affairs of the corporation. Wisconsin Ave. Assocs. v. 2720 Wisconsin Ave. Coop. Ass'n, 441 A.2d 956, 962 (D.C.), cert. denied, 459 U.S. 827 (1982).
 
 
 19
 The district court's finding that it was IF, and not MCHI, that deadlocked the decision making process at Ellipsat is not clearly erroneous. Once deadlocked, it was imperative for Castiel, in order to save Ellipsat, to proceed independently. Without monetary support from IF, Castiel was required to seek additional financing to pay for Ellipsat's mounting expenses. To obtain new capital, Castiel diluted his interest in MCHI. We cannot accept IF's argument that it was MCHI that breached fiduciary opportunities when the district court found that it was IF which paralyzed the young Ellipsat and forced MCHI to act independently to keep the operation afloat. Such findings are not clearly erroneous.
 
 
 20
 IF further contends that Castiel entered into numerous contracts without proper authority or board approval. There is no merit to this contention. First, the corporate bylaws permit Castiel, as president of Ellipsat, to enter into contracts at the behest of Ellipsat. Second, the Board was deadlocked and Castiel had to act independently to ensure Ellipsat's survival.
 
 
 21
 Finally, IF asserts that MCHI breached its duty to Ellipsat by diverting international business opportunities to other companies.[4] We find that the district court correctly construed the partnership agreement as establishing the United States as the exclusive market for the Ellipsat system. Therefore, any markets outside the United States could be rightfully pursued by Ellipsat International. To conclude, we agree with the district court that there was no breach of loyalty or care by the appellees.
 
 IV.
 
 22
 We review the district court's factual findings concerning the issues of patent, trademark and trade name under the clearly erroneous standard. In re Woodruff, 919 F.2d 1575, 1577 (Fed. Cir.1990). We review the court's legal conclusions de novo. Fields v. Attorney General, 956 F.2d 1290, 1294 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 243 (1992).
 
 A.
 
 23
 The district court found that MCHI is the sole owner of any patent rights for the Ellipso system. The court noted that Castiel devised the original idea of providing communications through a satellite system and made the early calculations for the system. The court also relied on the partnership agreement, which stated "MCHI has conceived an innovative satellite constellation to be used for mobile communications, the Ellipso system." Ownership of patent rights turns on the question of who invented the subject matter at issue. See Beech Aircraft Corp. v. Edo Corp., 990 F.2d 1237, 1248 (Fed. Cir.1993). The district court was not clearly erroneous in finding that Castiel, who conceived of the idea of Ellipso, owns the patent rights to the Ellipso system through his company, MCHI.
 
 
 24
 IF argues that the FCC applications, which were forwarded in the name of Ellipsat, clearly demonstrate that Castiel intended Ellipsat to be the owner of the Ellipso system. However, the district court noted "[a]pplications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing." 35 U.S.C.A. Sec. 261 (West 1984), and "the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent; it must express intention to transfer ownership." United States v. Solomon, 825 F.2d 1292, 1296 (9th Cir.1987) (quoting 5 Lipscomb's Walker on Patents, Title Sec. 19:7 (3d Ed.1986)), cert. denied, 484 U.S. 1046 (1988). The applications do not represent a clear attempt to assign the patent rights of the Ellipso system as required by law.
 
 
 25
 The district court concluded that the language in the partnership agreement together with representations made on the Ellipso applications gave Ellipsat an implied irrevocable license to use the Ellipso system in the United States. The agreement specifically provides that the United States is the intended market for Ellipsat. The district court found the partnership agreement gave rights to Ellipsat to market the Ellipso system in the United States. An implied license may be constructed where it is necessary to make sense of an agreement. See De Forest Radio Telephone Co. v. United States, 273 U.S. 236, 241 (1927) ("[a]ny language used by the owner of the patent, or any conduct on his part exhibited to another from which the other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license...."). We agree with the court's conclusion that Ellipsat has an implied irrevocable license to use the Ellipso system in United States, and MCHI owns the patent thereto.
 
 B.
 
 26
 Turning to the issues of trademark and trade name infringement, Ellipsat cannot have rights greater than those of MCHI, because MCHI exercised first use of the Ellipso mark and thereafter has exercised control over the nature and quality of the goods bearing the mark. See Ford Motor Co. v. Summit Motor Products, Inc., 930 F.2d 277, 292 (3d Cir.) ("[w]ith respect to ownership of unregistered marks, the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce."), cert. denied, --- U.S. ----, 112 S.Ct. 373 (1991). Once registration of the mark was achieved, under the related companies doctrine, any benefit derived from Ellipsat's use of Ellipso inured to MCHI. See 15 U.S.C. Sec. 1055 (West Supp.1994).
 
 
 27
 We affirm the district court's conclusion that Ellipsat has an implied license to use MCHI's trademark and trade name in the United States. According to the partnership agreement, MCHI conceived of the idea of the Ellipso system and thereafter registered the trade name, Ellipsat, and the trademark, Ellipso, in the name of MCHI. However, the partnership agreement also provided that Ellipsat was being formed to market Ellipso's services in the United States. To make sense of the agreement, the district court found that Ellipsat has an implied license to market Ellipso in the United States and this is not clearly erroneous. Because MCHI is the owner of all trademark, trade name and patent rights, there can be no Lanham Act violations.
 
 V.
 
 28
 We find IF's remaining argument that the district court erred in interpreting other provisions of the partnership agreement to be without merit.
 
 
 29
 For the foregoing reasons, the decision of the district court is
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 District of Columbia law requires a company to have at least three board members. D.C.Code Ann. Sec. 29-333 (1991)
 
 
 [2]
 Neither of the applications had been approved by the FCC as of the date of oral argument
 
 
 [3]
 Under the related companies doctrine, the benefit derived from the use of a registered mark or a mark sought to be registered by a related company will inure to the registrant or the applicant for registration. See 15 U.S.C.A. Sec. 1055 (West Supp.1994). The Lanhamn Act defines a related company as " any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. Sec. 1127 (West Supp.1994)
 
 
 [4]
 The district court found that IF did not wish for the new venture to interfere with IF's efforts to obtain business in Europe and elsewhere